MASSACHUSETTS BAY TRANSPORTATION AUTHORITY vs.
LOCAL 589, AMALGAMATED TRANSIT UNION & another.

Suffolk.   May 13, 1985. — July 22, 1985.

Present: GREANEY, C.J., GRANT, & SMITH, JJ.

*Arbitration,* Collective bargaining agreement, Authority of arbitrator, Judi-
cial review, Standing. *Contract,* Collective bargaining contract.
*Massachusetts Bay Transportation Authority,* Arbitration, Managerial
prerogative, Collective bargaining.

General Laws c. 251, the Uniform Arbitration Act, was not applicable to a
grievance arbitration between the Massachusetts Bay Transportation Au-
thority and a union arising under a collective bargaining agreement.
[422]

Although stating that G. L. c. 150C was applicable to proceedings brought by
the Massachusetts Bay Transportation Authority to vacate or modify an
arbitration award made in favor of a union pursuant to a collective
bargaining agreement, this court declined to decide whether the Author-
ity's action was time-barred by reason of the thirty-day limitation imposed
by § 11 (*b*) of c. 150C, where § 11 (*b*) was not clearly raised and
considered at trial as a basis for dismissing the action, and where nothing
in the record established the date when the award was received by the
union from which the thirty-day period could be measured. [422-425]

An arbitrator correctly determined that a union had standing to file a griev-
ance over the refusal of the Massachusetts Bay Transportation Authority
to permit a union member to exercise his "dropback rights" to return to
his former position as an operator after his layoff from an executive
position, where the question raised, whether the employee could retain
his union seniority while on a leave of absence to take a management
position, presented a purely contractual issue arising out of the provisions
of the collective bargaining agreement. [426]

Where a collective bargaining agreement between the Massachusetts Bay
Transportation Authority and a union provided that a union employee
who took a position outside the bargaining unit, but maintained union
membership by paying dues, might return to his former position in the
bargaining unit, that its provisions were binding upon the parties "from
year to year thereafter unless changed by the parties," and that binding
arbitration of all grievances was required, the Authority had a duty to

arbitrate a dispute which arose sometime after the term of the agreement had expired concerning its refusal to permit a union member to exercise his "dropback rights." [426-427]

Management rights provisions of G. L. c. 161A, § 19, as amended by St. 1980, c. 581, § 8, did not prohibit the Massachusetts Bay Transportation Authority and a union from entering into grievance arbitration of a dispute arising under a preexisting collective bargaining agreement, concerning the refusal of the Authority to permit a union member to exercise his "dropback rights" to return to his former position as an operator after his layoff from an executive position, and consequently, an arbitrator did not exceed his authority in ordering that the employee be given a position as an operator and that he receive back pay and lost benefits. [427-428]

CIVIL ACTION commenced in the Superior Court Department on June 15, 1982.

A motion to dismiss was heard by *Paul G. Garrity*, J.

The case was heard on motion for summary judgment by *John P. Forte*, J., sitting under statutory authority.

*Douglas Taylor* of the District of Columbia (*George O'Brien* with him) for the defendants.

*Ronald G. Busconi* for the plaintiff.

GREANEY, C.J. This is another in a continuing series of controversies between various unions and the Massachusetts Bay Transportation Authority (MBTA) over the effect on labor agreements of legislation curtailing the MBTA's powers to bargain collectively. Here, Local 589, Amalgamated Transit Union (union), appeals from a judgment entered in the Superior Court vacating an arbitration award in its favor. The underlying dispute concerns the refusal of the MBTA to permit a union member to exercise his dropback rights[1] to return to his former position as an operator after his layoff from an executive position.

---

[1] Dropback rights are the rights of a union employee who takes a position outside the bargaining unit, but maintains union membership by paying dues, to return to his former position in the bargaining unit. The arbitrator ruled that dropback rights constitute a binding past practice which was expressly incorporated into the collective bargaining agreement. The MBTA does not dispute this finding on appeal, and we do not review it.

The background of the case may be summarized as follows. The employee was hired by the MBTA as an operator in March, 1970, and was promoted to a management position as an assistant project manager in May, 1973. As an operator, the employee was a member of the Local 589 bargaining unit, and he continued to pay dues to the union, even though his manager's position was on the MBTA's executive payroll and outside the bargaining unit. By letter dated March 4, 1981, the employee was notified that his position as an assistant project manager had been eliminated because of budgetary constraints and that he would be terminated from employment with the MBTA at the end of his scheduled work assignment on March 20, 1981.

By letter dated March 11, 1981, the employee requested that the union permit him to exercise his dropback rights to return to his position as an operator in the bargaining unit. The union voted to allow the employee to drop back. The employee then advised the MBTA of his intention to exercise dropback rights. By letter dated March 20, 1981, the MBTA informed the employee that it would not honor his request because the right to dropback involved an inherent and exclusive management decision.

The MBTA and the union had entered into a collective bargaining agreement which provided for binding arbitration of all grievances. That agreement terminated on December 31, 1980, but it contained a so called rollover provision which made its provisions binding upon the parties "from year to year thereafter unless changed by the parties." The union, invoking the provisions of the collective bargaining agreement, filed a grievance on behalf of the employee which ultimately led to arbitration. At the arbitration the MBTA contended: (1) that the union was prevented by G. L. c. 161A, § 19A, from representing the interests of an executive employee; (2) that the arbitrator lacked jurisdiction over the dispute because the collective bargaining agreement had expired when the grievance arose; and (3) that, if the agreement was still in effect, the management rights statute (G. L. c. 161A, § 19) precluded the employee's exercise of dropback rights. That

20 Mass. App. Ct. 418                    421

Massachusetts Bay Transportation Authority v. Local 589, Amalgamated Transit Union.

statute, which had been amended effective December 8, 1980 (by St. 1980, c. 581, § 8), a few weeks prior to the termination date of the collective bargaining agreement, provides, in pertinent part, that the MBTA "shall have no authority to bargain collectively and shall have no authority to enter into collective bargaining agreements with respect to matters of inherent management right." The statute defines management right as including, among others, the rights "to direct, appoint, employ, assign and promote . . . employees" and "to develop and determine levels of staffing and training."

By decision dated May 6, 1982, the arbitrator decided that the union had standing to pursue the grievance and that the collective bargaining agreement remained in effect. The arbitrator concluded that the MBTA had violated the agreement by denying dropback rights to the employee, and to other members of the union affected by similar layoffs, subject however to the possibly superseding effect of the management rights statute. The arbitrator ordered that the employee be given a position as an operator and that he receive back pay and lost benefits.

On June 15, 1982, the MBTA commenced an action in the Superior Court pursuant to G. L. c. 231A, seeking a declaration on the three grounds argued before the arbitrator. The union answered and moved to dismiss the action, asserting that G. L. c. 251 governed the arbitration and that "[§§] 12 and 13 of [c.] 251, which provide for vacating or modifying an award, each *require* application to the court within 30 days of the delivery of the award" (emphasis original). A judge of the Superior Court denied the union's motion to dismiss. Both the MBTA and the union then moved for summary judgment pursuant to Mass.R.Civ.P. 56, 365 Mass. 824 (1974). A second judge, sitting in the Superior Court under statutory authority, concluded that the management rights statute controlled the case and allowed the MBTA's motion. A judgment thereafter entered declaring that the arbitrator's decision had violated G. L. c. 161A, § 19, and was a nullity. A timely appeal was taken by the union from the judgment.[2]

---

[2] The panel deciding this case originally entered an order dismissing the union's appeal because docket entries of the Superior Court indicated that

1. The union's motion to dismiss, which, as noted, was grounded exclusively on the alleged failure of the MBTA to challenge the award within the thirty-day time limit set forth in §§ 12 and 13 of G. L. c. 251, was properly denied. General Laws c. 251, the Uniform Arbitration Act, applies to commercial arbitration. We think it clear that c. 251 does not apply to a grievance arbitration like this one which arises under a collective bargaining agreement.[3] Indeed, the last sentence of § 1 of c. 251 expressly provides that the statute does not apply to collective bargaining agreements to arbitrate subject to G. L. c. 150C.

On appeal, the union argues that the MBTA's action must be dismissed because it was not filed within the thirty-day time limitation imposed by G. L. c. 150C, § 11(*b*), on proceedings to vacate or modify an arbitration award made pursuant to a collective bargaining agreement. The MBTA responds that, as a political subdivision of the Commonwealth, it is not subject to c. 150C and that, if it is subject to c. 150C its claims, if shown to be late-filed, must still be considered because they demonstrate that the arbitrator lacked jurisdiction, a question which, according to the MBTA, is "always" open.

We think c. 150C applies to the MBTA. Section 1 of c. 150C provides, in reasonably expansive language, that written collective bargaining agreements to arbitrate between labor organizations and employers are valid and enforceable. See *Boston Lodge 264, Intl. Assn. of Machinists* v. *Massachusetts Bay Transp. Authy.*, 389 Mass. 819, 820 n.1 (1983). The MBTA maintains, however, that because § 1 of c. 150C, inserted by St. 1959, c. 546, § 1, specifically refers to G. L. c. 150A, § 2(5), for the definition of a "labor organization," this court

the union's notice of appeal had not been timely filed. The union thereafter petitioned for relief from that order, based upon a corrected copy of the Superior Court docket, which disclosed that its appeal had been taken and pursued in a timely manner. The union's petition is allowed, and we proceed to deal with the appeal on its merits.

[3] This is not to say, however, that c. 251 does not apply, where appropriate, to *commercial* arbitrations between the MBTA and other parties. In some cases, arbitration involving the MBTA is specifically governed by c. 251. See G. L. c. 161A, § 14(*b*).

must refer to G. L. c. 150A, § 2(2), as amended through St. 1964, c. 576, § 2, for the definition of an "employer." The latter provision excludes the Commonwealth and its political subdivisions from the definition of "employer." The obvious difficulty with the MBTA's argument lies in the fact that the Legislature in c. 150C, § 1, incorporated only the definition of a "labor organization" which appears in c. 150A, § 2(5), and made no corresponding mention of the definition of the term "employer" in c. 150A, § 2(2). Had the Legislature intended that the term "employer" in c. 150C, § 1, be defined in accordance with the definition of that word appearing in c. 150A, § 2(2), we think it would have expressly said so. Cf. *First Natl. Bank* v. *Judge Baker Guidance Center,* 13 Mass. App. Ct. 144, 153 (1982). In keeping with accepted principles of statutory construction, we conclude that the term "employer" in c. 150C, § 1, is to be given its ordinary meaning, which would include an employer such as the MBTA. See, e.g., *County of Middlesex* v. *Newton,* 13 Mass. App. Ct. 538, 542 (1982).

There is also nothing in G. L. c. 161A, the statute governing the MBTA's operations, which indicates a legislative intent to exclude the MBTA's collective bargaining agreements to arbitrate from the coverage of G. L. c. 150C. The MBTA has been expressly given the authority to include in its collective bargaining agreements a grievance procedure which culminates in final and binding arbitration. G. L. c. 161A, § 19. The management rights statute, which establishes definitive requirements for interest arbitration of MBTA collective bargaining agreements, specifically provides that it does not limit a labor organization's right to submit grievances to arbitration in accordance with the governing collective bargaining agreement. G. L. c. 161A, § 19C. Chapter 150C merely makes written collective bargaining agreements to arbitrate enforceable and establishes efficient, fair, and uniform procedures for the conduct of arbitration under such agreements and for resolving questions relating to the validity of resulting awards. Since such agreements are not subject to the procedures of G. L.

c. 161A, §§ 19C through 19G, we perceive no conflict between those provisions and c. 150C.[4]

However, for at least two reasons, we need not decide whether the MBTA's action was time-barred by reason of the thirty-day limitation imposed by § 11(*b*) of c. 150C. First, § 11(*b*) was not clearly raised in the Superior Court as a basis for dismissing the action, and that statute appears not to have been expressly considered by the judge who passed on the motion to dismiss.[5] In our view, this is not an appropriate case to consider an issue that was not raised and considered below.[6]

---

[4] The decisions relied upon by the MBTA to exclude itself from c. 150C are inapposite. *Hansen* v. *Commonwealth,* 344 Mass. 214 (1962), dealt with the much different provisions of the anti-injunction act, G. L. c. 214, § 9A, inserted by St. 1935, c. 407, § 4. *Massachusetts Bay Transp. Auth.* v. *Labor Relations Commn.,* 356 Mass. 563 (1970), discussed the effect of G. L. c. 161A, § 19, inserted by St. 1964, c. 563, § 18. That statute referred cases to the Board of Conciliation and Arbitration for resolution rather than to the Labor Relations Commission.

[5] Indeed, both the MBTA and the union appear to have taken the position in the Superior Court that c. 150C did not apply to this arbitration and argued only that c. 251 applied. From all that appears in the record, the judge may have denied the union's motion to dismiss because c. 251 did not apply to the proceedings.

[6] The need for prudence, when procedural grounds exist to avoid the issue, becomes apparent upon reflection on the questions latent in the MBTA's argument that its claims are jurisdictional and, therefore, not subject to the thirty-day limitation imposed by § 11(*b*).

The MBTA's claims that the union lacked standing to press the grievance and that no agreement to arbitrate existed pose traditional jurisdictional attacks. The MBTA's claim that the award contravened the management rights statute may also be jurisdictional, at least in the sense that the MBTA argues that the arbitrator lacked authority to fashion an award that would impinge on inherent management prerogatives.

There is language in the cases that jurisdictional defects in arbitration proceedings are "always open." See, e.g., *Local 589, Amalgamated Transit Union* v. *Massachusetts Bay Transp. Authy.,* 392 Mass. 407, 410-411 (1984). That language, however, is usually stated in a context where the time limitation in § 11(*b*), or a similar limitation, is not in issue. It may be that the "always open" language in the cases refers only to the possible vulnerability of the award on a timely-filed application to vacate which questions jurisdiction. As such, that language would merely state an exception to the usual rule that arbitration awards will not be set aside for error of law or fact. No decision appears to have dealt with the issue in terms of analogous rules which appear to apply principles of estoppel or waiver to

Second, the union had the burden of proving that the MBTA's action was filed more than thirty days after the date of the delivery of the award.[7] There is nothing in the record which establishes the date of the receipt of the award.[8] Since, if the MBTA missed the relevant thirty-day deadline at all, it missed it by only a few days we think it should be given the benefit of the doubt on the issue of the timeliness of its challenge in the absence of proof by the union establishing the critical date of the award's receipt. Cf. *Sheahan* v. *School Comm. of Worcester,* 359 Mass. 702, 709-710 (1971). We turn, therefore, to the merits of the MBTA's claims.

civil cases involving questions of jurisdiction, where the party contesting jurisdiction either fails to raise the issue or raises it for the first time on appeal. Moreover, the exceptions set forth in § 11(*b*) for late filing do not include an exception for jurisdictional questions. Finally, the "always open" principle, if not confined within the thirty-day limitation, might create an exception capable of swallowing the rule.

The parties in this case have not briefed any of these difficult problems, a circumstance which fortifies our decision to leave the issue for a case where the application to vacate the arbitration award is shown to have been late-filed and the party attacking the award has properly questioned jurisdiction.

[7] *Greene* v. *Mari & Sons Flooring,* 362 Mass. 560, 562 (1972), makes clear that the relevant thirty-day period in § 11(*b*) is measured from the date when the award is received by the party challenging it.

[8] Since the case was commenced by a complaint, which the union answered, the parties have treated the proceedings as subject to the Massachusetts Rules of Civil Procedure. The union asserts that the fact that the MBTA missed the thirty-day limit is established by an assertion to that effect in its answer. Relying on Mass.R.Civ.P. 8(d), 365 Mass. 750 (1974), the union contends that the MBTA's failure to deny the averment of lack of timeliness renders the fact admitted. Rule 8(d), however, does not apply to "[a]verments in a pleading to which no responsive pleading is required or permitted," and states that such averments "shall be taken as denied or avoided." The MBTA was not required to respond to the union's answer. See Mass.R.Civ.P. 7(a), 365 Mass. 748-749 (1974); *Crain* v. *Blue Grass Stockyards,* 399 F.2d 868 (6th Cir. 1968). The 11(*b*) contention was analogous to a statute of limitations defense which was to be raised and proved by the union as the party asserting it. See Mass.R.Civ.P. 8(c), 365 Mass. 750 (1974). There was nothing on the face of the MBTA's complaint to show its late filing, contrast *Babco Indus. Inc.* v. *New England Merchants Natl. Bank,* 6 Mass. App. Ct. 929 (1978), and no proof was presented by the union to establish the point. See 2A Moore's Federal Practice par. 12.10 (2d ed. 1985).

2.  (a) Section 19A of c. 161A, inserted by St. 1970, c. 514 makes the provisions of G. L. c. 150A, § 5, which govern the formation of collective bargaining units, applicable to MBTA employees but specifically excludes from units so formed any "executives." Since the employee here was an executive employee at the time he was laid off, the MBTA contends that the union had no right to represent his interests. We disagree.

The arbitrator determined that the union had standing to file a grievance over this dispute because it was representing the employee with respect to his right to dropback to a position contained within the bargaining unit, for which the union serves as the exclusive representative. The status of that position, in which the union has a direct concern, constituted the core of the arbitration. Moreover, the employee was not an executive employee when he became a member of the bargaining unit pursuant to G. L. c. 150A, § 5, and he had already been laid off from his executive position when the union represented him in this arbitration. The question whether the employee could retain his union seniority while on a leave of absence to take a management position thus presented a purely contractual issue arising out of the provisions of the collective bargaining agreement, and involving their interpretation, which fell within the scope of the arbitrator's authority. See *Boston Lodge 264, Intl. Assn. of Machinists* v. *Massachusetts Bay Transp. Authy.,* 389 Mass. at 821. Even if error exists in the manner in which the arbitrator resolved the question, we would, in these circumstances, honor the arbitrator's conclusion that the union had standing to press the grievance. See *Greene* v. *Mari & Sons Flooring,* 362 Mass. 560, 563 (1972).

(b) There was, at the relevant times, an existing agreement to arbitrate disputes arising under the collective bargaining agreement. That agreement's rollover provision provided that after the agreement's expiration date all prior provisions of the agreement were to remain in effect until a new agreement should be negotiated. In a similar case, arising subsequent to the 1980 revision of c. 161A, § 19, the Supreme Judicial Court ordered arbitration of a grievance arising after the collective bargaining agreement had expired but during the period of a

rollover provision which required the payment of quarterly cost-of-living adjustments during "any period of negotiations." *Boston Lodge 264, Intl. Assn. of Machinists* v. *Massachusetts Bay Transp. Authy.*, 389 Mass. at 821. As the court stated in that decision, "The fact that the term of a collective bargaining agreement has expired does not mean there can be no duty to arbitrate issues arising out of that agreement, where the agreement includes obligations extending beyond its term and where there is a broadly expressed agreement to arbitrate grievances arising out of that agreement." *Ibid.* We think this principle applies to the situation before us, where the provisions of the collective bargaining agreement, which incorporated the right claimed by the employee, explicitly extended beyond the agreement's stated expiration date. Accordingly, this grievance, which arose within the first three months of the rollover period, was arbitrable.[9]

(c) The management rights statute does not prohibit the MBTA from complying with the arbitrator's award. That statute is concerned only with *interest* arbitration and the terms of future collective bargaining agreements and does not prohibit *grievance* arbitration of disputes arising under valid preexisting agreements. *Boston Lodge 264, Intl. Assn. of Machinists* v. *Massachusetts Bay Transp. Authy.*, 389 Mass. at 822. See

---

[9] Contrary to the MBTA's contention, there is nothing in the recent decision of the United States Court of Appeals for the First Circuit upholding the constitutionality of the management rights statute which suggests that it overrides all rollover clauses as matter of law. *Local Div. 589, Amalgamated Transit Union* v. *Massachusetts,* 666 F.2d 618 (1st Cir. 1981). Although that decision held that the management rights statute could constitutionally override a perpetual rollover clause, the court noted that a Massachusetts State court might avoid conflict with the management rights statute by interpreting a rollover clause to extend the contract only for "a reasonable time" after expiration of the contract's express term. *Id.* at 636-637. Clearly, a grievance like this one, occurring within three months after the agreement has expired, has arisen within a reasonable extension of the agreement by its rollover provision. Moreover, all the Court of Appeals decided was that the management rights statute would be constitutional, without regard to whether the statute applied prospectively or retroactively. That court expressed no opinion as to which interpretation a State court dealing with the agreement should adopt.

*Local Div. 589, Amalgamated Transit Union* v. *Massachusetts,* 666 F.2d 618, 640 (1981). This arbitration falls within the latter category.[10] As G. L. c. 161A, § 19, as amended by St. 1980, c. 581, § 8, does not control the dispute, it follows that the arbitrator did not exceed his authority in making the award.

3. The order of this court dismissing the appeal is vacated. The judgment of the Superior Court is reversed. A new judgment is to be entered declaring that the arbitration award is lawful and is to be enforced.

*So ordered.*

---

[10] The collective bargaining agreement between the parties here did ultimately reach interest arbitration, and an award was made on January 15, 1983, which superseded the expired agreement. That award eliminated the past practices provision which was the source of employee dropback rights. The MBTA argues that the expiration date of the past practices clause is made retroactive by the January 15, 1983, arbitration award to December 31, 1980. We reject any such interpretation of the 1983 award. That award explicitly provides that "[e]xcept where specifically noted, the changes shall be made effective as of the date of this award." The elimination of the past practices provision contains no specific date and, therefore, by the terms of the award, became effective as of January 15, 1983.