Garsh, J.
The plaintiff, Henry S. Turgeon, II, filed this action seeking confirmation of an arbitration award pursuant to G.L.c. 251. This matter is before the court on the City of New Bedford’s motion to dismiss pursuant to Mass.R.Civ.P. 12(b)(6). For the reasons discussed below, the plaintiffs motion for confirmation of the arbitration award is denied, and the City’s motion to dismiss is allowed.
BACKGROUND
Plaintiff Henry S. Turgeon, II (“Turgeon”) has been a police officer in the City of New Bedford (“City”) since 1992. In September of 1997, Turgeon filed a complaint against the City with the Massachusetts Commission Against Discrimination (“MCAD”), charging that the City had discriminated against him when it removed him from the Police Department’s Tactical Patrol Force and Special Reaction Team based on a perceived handicap. On October 19, 1998, Turgeon and the City agreed in writing to submit the case to the American Arbitration Association pursuant to MCAD Policy 96-1, the Program on Alternative Dispute Resolution. Policy 96-1, which establishes guidelines for binding arbitration by voluntary agreement of the parties, provides in relevant part:
(a) Thirty business days after the decision of the arbitrator is filed at the Commission, the decision will become final and binding on the parties and the case will be closed. Before thirty days have elapsed, the decision may be set aside by an order of two Commissioners of the MCAD. The Commissioners may set the decision aside if, after reviewing it, they believe the decision is not in the public interest based on the following criteria:
i. the award was procured by corruption, fraud or other undue means;
ii. there was evident partiality by an arbitrator appointed as a neutral, corruption of the arbitrator or other misconduct prejudicing the rights of any party;
iii. the arbitrator exceeded their [sic] powers or refused to hear evidence material to the issues in dispute;
iv. the decision of the arbitrator is palpably wrong and/or is clearly repugnant to the purposes or policies of the Commission;
iv. [sic] every reasonable presumption will be made in favor of the award;
If a decision is set aside by the Commissioners, the complaint shall be reinstated at the Commission back to the point at which the parties elected arbitration and will then proceed along the normal course to adjudication. The arbitrator’s decision, as well as the record of the arbitration proceeding, will be admissible at a public hearing if the case is reinstated at the Commission.
(b) Upon application made within thirty days after delivery of a copy of the award to the applicant, the Commission shall modify or correct the award if:
i. there was an evident miscalculation of figures or an evident mistake in the description of any person, thing or property referred to in the award;
ii. the award is imperfect in a matter of form, not affecting the merits of the controversy;
If the application is granted, the Commission shall modify and correct the award so as to effect its intent and shall confirm the award as so modified and corrected.
Following two days of hearings, the Arbitrator found in favor of Turgeon in a Decision and Order dated December 13, 1999, ordering the City to reinstate him to the Tactical Patrol Force and Special Reaction Team, and awarding back pay, emotional distress damages and punitive damages. The Arbitrator stated in the decision that he was retaining jurisdiction of the case until all issues concerning reinstatement, back pay and attorneys fees were concluded. The City filed a Notice of Appeal of the Arbitrator’s decision with the MCAD on December 23, 1999.
On January 12, 2000, the Arbitrator issued a Clarification of Order in which he ordered the City to pay reasonable attorneys fees to Turgeon, such payment to be agreed to by the parties within sixty days. In March of 2000, the Arbitrator issued an Informational Order requesting information from the parties on outstanding matters, including attorneys fees. Thereafter, on April 6, 2000, the Arbitrator issued a Final Order in which he awarded Turgeon $24,388.93 in attorneys fees and stated that he would have no further jurisdiction over the case.
*28 The City received the complete and final decision of the Arbitrator by April 13, 2000. There appears to be no dispute that the decision of the Arbitrator was filed with the MCAD on or about the same date. On May 2, the City filed a memorandum of law with the MCAD arguing that the Arbitrator’s decision should be set aside on the grounds that it was palpably wrong and repugnant to the Commission’s policies because Turgeon failed to establish a prima facie case of handicap discrimination, the Arbitrator improperly considered certain evidence, and the Arbitrator exceeded his powers and acted in a manner repugnant to the Commission’s policies by awarding punitive damages and interest and ordering reinstatement of Turgeon to the Tactical Patrol Force and Special Reaction Team. When the MCAD failed to set aside the decision of the Arbitrator by May 14, 2000, Turgeon took the position that, pursuant to Policy 96-1, the decision had become final and binding on the parties and the MCAD lacked authority to keep the case open.[2] However, by letter dated May 26, 2000, the MCAD notified the parties that the case remained under review by the Commission.
On June 7, 2000, Turgeon filed the present action alleging that the time period for setting aside the Arbitrator’s award under MCAD Policy 96-1 had expired and seeking confirmation of the award pursuant to G.L.c. 251. Thereafter, by letter dated June 20, 2000, the MCAD notified the parties that, having reviewed the City’s request to vacate the Arbitrator’s award in accordance with Policy 96-1, it declined to set aside the award. The letter stated that the Arbitrator’s award was final and that the MCAD case would be deemed closed. Accordingly, on June 23, Turgeon amended his Superior Court complaint to reflect this action by the MCAD and filed a motion to confirm the Arbitrator’s award pursuant to G.L.c. 251, §11. In response, the City filed a motion to dismiss Turgeon’s complaint pursuant to Mass.R.Civ.P. 12(b)(6) on the ground that Chapter 251 is not the appropriate vehicle for seeking enforcement of the arbitration decision at issue.[3]
On July 18, 2000, the City filed an independent action in Superior Court, seeking review, pursuant to G.L.c. 30A, of the MCAD’s decision to uphold the Arbitrator’s award.
DISCUSSION
The City contends that Turgeon’s complaint fails to state a claim upon which relief can be granted because G.L.c. 251 does not govern an arbitration decision rendered pursuant to MCAD Policy 96-1 that has become final by virtue of the MCAD’s choice not to set aside the decision pursuant to the criteria set forth in its policy. The statutory scheme devised for discrimination cases and the language of Policy 96-1 warrant the conclusion that Turgeon is not entitled to seek confirmation of the Arbitrator’s award in Superior Court pursuant to Chapter 251. Discrimination cases brought before the MCAD that go to arbitration remain pending before the MCAD, within its exclusive jurisdiction and subject to its review. The MCAD’s review of an arbitrator’s decision is itself reviewable under c. 30A.
General Laws Chapter 15 IB sets forth a comprehensive and exclusive scheme for redressing unlawful discrimination in employment.[4] See Green v. Wyman-Gordon Co., 422 Mass. 551, 554-55 (1996). Pursuant to c. 151B, §9, “as to acts declared unlawful by section four,[5] the procedure provided in this Chapter shall, while pending, be exclusive; and the final determination therein shall exclude any other action, civil or criminal, based on the same grievance of the individual concerned.” G.L.c. 15 IB, §9. A claimant under Chapter 15 IB has the absolute right after ninety days to remove the claim from the MCAD and proceed in court. Id. Once the claimant has notified the MCAD of the filing of such an action, the MCAD is required to dismiss the charge pending before it. Id. The Legislature has decreed that ”[t]he provisions of this Chapter shall be construed liberally for the accomplishment of the purposes thereof, and any law inconsistent with any provision hereof shall not apply . . .” Id.
Policy 96-1 governs arbitration of discrimination claims that are pending before the MCAD and have not been removed to court. Although the MCAD delegates its power with respect to such a claim to an arbitrator, the MCAD retains the right to review the arbitrator’s decision before it closes the case in order to determine whether the decision is in the public interest. Indeed, the MCAD retains the right to set aside the decision if two commissioners believe it not to be in the public interest even if no party to the arbitration objects to the arbitrator’s decision.[6] Policy 96-1 itselfnotes, ”[b]y adopting a policy which allows for the arbitration of discrimination claims, the Commission will be vesting third-party neutrals with considerable powers. Because of this, and because of the important social values embodied in discrimination law, strict parameters will be placed on the circumstances under which Commission sanctioned arbitration will take place.”
Those parameters — to which the parties agreed— include the agency’s ability to set aside the decision if at least two commissioners believe it is not in the public interest based on criteria that include “the decision of the arbitrator is palpably wrong and/or is clearly repugnant to the purposes or policies of the Commission.” Chapter 251, by contrast, provides that “the fact that the relief [awarded] was such that it could not or would not be granted by a court of law or equity is not ground for vacating or refusing to confirm the award.” G.L.c. 251, §12(5). Policy 96-1 has no equivalent to this provision with respect to either a court or the MCAD. The power reserved by the MCAD to set aside an arbitration decision, even in the absence of any request to do so, because it may be repugnant to the purposes or policies of that agency *29 exceeds the power of this court to vacate an award under G.L.c. 251, §12.[7] While an arbitrator may not award relief which “offends public policy or which requires a result contrary to statute,” Lawrence, 300 Mass, at 28, a court may not substitute its judgment even if the arbitrator has committed errors of law or fact in assessing damages. Id. It calls for the quintessential application of specialized agency expertise, the MCAD being in the best position to evaluate whether a decision is “clearly repugnant” to its purposes or policies.[8]
Awards rendered under Policy 96-1 are not, in essence, free-standing arbitration awards, the delivery of which could trigger c. 251, §12 review,[9] but rather are decisions rendered as one part of an agency proceeding and subject to being set aide by the MCAD on whatever rational criteria the agency may choose to include in its policy, indeed, at the outset of the arbitration hearing in the present case, the Arbitrator noted that the proceeding before him was “an MCAD case, not necessarily an arbitration case.”
If the arbitration decision at issue were subject to confirmation under Chapter 251, the MCAD’s determination that it was not clearly repugnant to the purposes or policies of the Commission would be rendered unreviewable. Such a result would encroach upon the MCAD’s exclusive authority to determine cases pending before it, the final determination of which must exclude any other civil action based on the same grievance of the individual concerned. The Legislature has decreed that Chapter 15IB shall trump any law inconsistent with Chapter 15IB. Accordingly, arbitration decisions rendered under Policy 96-1 are not reviewable under Chapter 251. Instead, the MCAD’s decision pursuant to Policy 96-1 to close the case before it and thereby make the arbitrator’s decision final and binding on the parties constitutes a final agency decision subject to review under Chapter 30A, §14(7), as incorporated by G.L.c. 151B, §6. Cf. Department of Transportation v. MacAsphalt, Inc., 429 So.2d 1281, 1283 (Fla.App. 1983) (concluding that an arbitration award issued by the State Road Arbitration Board is agency action subject to judicial review pursuant to Florida’s Administrative Procedure Act as to both procedures and standards for review, rather than its Uniform Arbitration Code).
The conclusion that Chapter 251 is inapplicable to arbitration awards rendered in MCAD proceedings and subject to MCAD review is bolstered by an examination of the specific provisions of Chapter 251. For example, section 2(a) provides:
A party aggrieved by the failure or refusal of another to proceed to arbitration under an agreement described in section one may apply to the superior court for an order directing the parties to proceed to arbitration. If the opposing party denies the existence of the agreement to arbitrate, the court shall proceed summarily to the determination of the issue so raised and shall, if it finds for the applicant, order arbitration: otherwise, the application shall be denied. G.L.c. 251, §2(a).
Although Policy 96-1 does not address the situation where one party refuses to proceed to arbitration after agreeing to do so, since the MCAD retains jurisdiction over the case, it would be inappropriate for the Superior Court, rather than the MCAD, to order parties to arbitration.
Application of section 2A would also intrude upon the MCAD’s exclusive authority to resolve discrimination claims pending before it in the manner it chooses to do so. That section permits “a party aggrieved by the failure or refusal of another to agree to consolidate one arbitration proceeding with another or others, from which the method of appointment of the arbitrator or arbitrators is the same, or to sever one arbitration proceeding from another or others” to apply to the Superior Court for consolidation or severance. G.L.c. 251, §2A. If the MCAD has declined to consolidate or sever cases pending before it, a court should not be able to deem consolidation or severance of arbitration proceedings related to different claims pending before the MCAD to be in order.
Further, the procedure for judicial confirmation and vacation of an award set out in G.L.c. 251, §§11 and 12 are not amenable to application in the context of arbitrations undertaken,pursuant to Policy 96-1. Section 11 directs the court to confirm an award “unless within the time limits hereinafter imposed grounds are urged for vacating or modifying or correcting the award . . .” G.L.c. 251, §11. An application to vacate an award on grounds other than corruption, fraud, or undue means must be made within thirty days after delivery of a copy of the award to the applicant. G.L.c. 251, § 12(b). Section 8, in turn, provides that the arbitrators shall deliver a copy of the award to each party personally or by registered mail. G.L.c. 251, §8. The MCAD, however, has thirty business days after the arbitration decision has been filed at the Commission to set aside the award. If the time frame in Chapter 251 were applicable, a court would have the power to confirm the arbitrator’s award while the underlying claim remains open before the MCAD and before that agency has used its thirty business days to decide whether the award should be set aside. To construe the phrase “within thirty days after delivery of the award to the applicant” in G.L.c. 251, § 12(b) as meaning within thirty days after the arbitrator’s decision becomes final by virtue of the MCAD’s deciding not to set it aside would eliminate one conflict, but it would do so only by ignoring plain and unambiguous statutory language. This court is not free to so rewrite the statute. Shamban v. Masidlover, 429 Mass. 50, 54 (1999) (courts are “constrained to follow statutory language when it is plain and unambiguous, unless to do so would lead to an absurd result, or be contrary to the Legislature’s manifest intention”).
*30 Moreover, many of the grounds for judicial review duplicate the review which the MCAD undertakes. See G.L.c. 251, § 12(a)(1),(2),(3) and (4). It would make little sense for the court, in the context of an application to vacate, to determine de novo, for example, whether there was evident partiality by the arbitrator or whether the arbitrator exceeded his powers. Section 12 also would permit a court to vacate an award on grounds that the MCAD specifically chose not to include in its review. See G.L.c. 251, § 12(a) (4) and (5).
Construing Chapter 251 as applying part of section 11 — the confirmation provision rewritten to delete the reference to “unless within the time limits hereinafter imposed grounds are urged for vacating or modifying or correcting the award, in which case the court shall proceed as provided in sections twelve and thirteen”— to arbitrations undertaken pursuant to Policy 96-1, but not applying sections 12 and 13 — the vacation, modification and correction provisions — or any procedural provision inconsistent with Policy 96-1 would require this court to redesign the statute to allow a square peg to fit into a round hole. Such redrafting bears little resemblance to statutory construction. See School Committee of Brockton v. Teachers’ Retirement Board, 393 Mass. 256, 262 (1984) (a statute should be construed so that effect is given to all its provisions and no part is rendered inoperative or superfluous).
Turgeon’s argument that he has the right to seek confirmation of the award under c. 251, §11 but that the City has no right to seek to vacate the award under sections 12 and 13 because the parties opted out of those judicial review provisions when they agreed to arbitrate is without any support in the parties’ agreement to arbitrate. It matters not whether parties hypothetically can so agree.[10] Turgeon and the City did not. The Submission to Arbitration Agreement states that the parties “hereby submit the dispute ... to binding arbitration under the MCAD Program on ADR (Policy 96-1) as administered by the American Arbitration Association.” Neither the Submission to Arbitration Agreement nor Policy 96-1 makes any reference to Chapter 251.
There is no merit to Turgeon’s assertion that a prevailing party will have no mechanism for enforcing his award unless Chapter 251 applies to arbitration awards rendered under Policy 96-1. Pursuant to 804 Code Mass. Regs. §1.25(2), any person affected by a final order of the MCAD may file a complaint with the Commission seeking enforcement, whereupon the MCAD “shall proceed to obtain enforcement by filing a petition in the appropriate state court pursuant to M.G.L.c. 15IB, §6.” Thus, a party who agrees to arbitration under Policy 96-1 and who obtains an award that is determined by the MCAD to be final and binding is in the same position as any other party who has received an award from the MCAD.
In sum, Chapter 251 does not encompass the arbitration award secured by the plaintiff.[11] If the MCAD erred by refusing to set aside that award and if the City’s Chapter 30A appeal was timely filed,[12] the City has the right to seek judicial review of the MCAD's error. If the MCAD did not err or if the City’s Chapter 30A appeal was not timely, the plaintiff may file a complaint with the Commission seeking enforcement. [13]
ORDER
For the foregoing reasons, it is hereby ORDERED that the plaintiffs motion for confirmation of the arbitration award be DENIED. It is further ORDERED that the City’s motion to dismiss the amended complaint be ALLOWED.

Turgeon now concedes that the MCAD had thirty business days, not thirty calendar days, to decide whether to set aside the Arbitrator’s decision.

The MCAD, which is a party to this action, has chosen not to file an answer or to submit a memorandum of law in connection with the pending cross-motions.

This case does not involve the enforcement of an arbitration award arising out of a contractual clause in an employment agreement in which the parties have agreed to arbitrate claims of discrimination that could be brought before the MCAD under Chapter 15IB.

Section four, inter alia, makes it unlawful for an employer to discriminate against an employee because of his handicap.

Nothing in Policy 96-1 requires a party to ask that the MCAD set aside the arbitrator’s decision on the ground that it is not in the public interest. Rather, the policy provides that, within thirty business days after the decision of the arbitrator has been filed at the MCAD, the Commissioners may set it aside on the basis of specified criteria. Compare G.L.c. 251, §12 (b), which requires an application to vacate on grounds other than corruption, fraud, or undue means to be made within thirty days after delivery of a copy of the award to the applicant.

“[J]udiciaI review of arbitration awards is confined to certain narrow grounds." Lawrence v. Falzarano, 380 Mass. 18, 28 (1980). G.L.c. 251, §12 provides that
[u]pon application of a party, the court shall vacate an award if:
(1) the award was procured by corruption, fraud or other undue means;
(2) there was evident partiality by an arbitrator appointed as a neutral, or corruption in any of the arbitrators, or misconduct prejudicing the rights of any party;
(3) the arbitrators exceeded their powers;
(4) the arbitrators refused to postpone the hearing upon sufficient cause being shown therefor or refused to hear evidence material to the controversy or otherwise so conducted the hearing, contrary to the provisions of section five, as to prejudice substantially the rights of a party; or
(5) there was no arbitration agreement and the issue was not adversely determined in proceedings under section two and the party did not participate in the arbitration hearing without raising the objection; but the fact that the relief was such that it could not or would not be granted by a court of law or equity is not ground for vacating or refusing to confirm the award.
G.L.c. 251, § 12(a).

A claimant who chooses to proceed in court after filing a claim with the MCAD can, if the claim thereafter goes to arbitration, avoid review by the MCAD as to whether the *31 decision is in the public interest and avoid judicial review of the MCAD’s decision not to set aside the award.

G.L.c. 251, § 12 permits a court to vacate an award on the grounds specified therein, other than corruption, fraud or other undue means, if an application is made within thirty days after delivery of a copy of the award to the applicant.

Turgeon’s analogizing his agreement to arbitrate pursuant to Policy 96-1 to an arbitration agreement providing for appellate arbitral review of an award does not support the proposition that the confirmation provision, but not the vacation, modification, and correction provisions, of Chapter 251 apply to the instant award. Assuming that Chapter 251 does not explicitly provide for an agreement by the parties providing for appellate arbitral review because the authority to contract for an internal appellate arbitral review is inherent, see Reporter’s Note 8 to Section 23 of the Proposed Revisions of the Uniform Arbitration Act at 81 (2000), an agreement for arbitral appellate review does not, in and of itself, warrant the conclusion that the parties have agreed that sections 12 and 13 of Chapter 251 are inapplicable. Furthermore, when the appellate review is to be performed by a state agency before which the claim that has been arbitrated is pending and pursuant to guidelines adopted by the agency and not in a second arbitral proceeding. Chapter 30A review is triggered in the absence of language in the agreement to the contrary.

Because this court concludes that Chapter 251 does not apply to arbitrations undertaken pursuant to Policy 96-1, it is unnecessary to reach whether, in a different context, Chapter 251 would apply to an arbitration of an employment dispute. The statute, which purports to apply to “[a] written agreement to submit any existing controversy to arbitration,” explicitly excludes only collective bargaining agreements to arbitrate. G.L.c. 251, §1. The Uniform Arbitration Act states that it “applies to arbitration agreements between employers and employees . . . [unless otherwise provided in the agreement].” 7 U.L.A. §1 (1997). Moreover, in at least two decisions, the courts have assumed, without deciding, that Chapter 251 applies to individual arbitration agreements between an employer and employee. See, e.g., O’Brien v. Hanover Insurance Co., 427 Mass. 194, 197-201 (1998) (applying c. 251 to a dispute over an employee’s severance agreement); Mugnano-Bornstein v. Crowell, 42 Mass.App.Ct. 347, 350 n. 7 (1997) (noting that the trial judge had assumed that c. 251 applied to a dispute involving an employee’s claims of sexual harassment, gender discrimination and defamation). Compare Corion Corp. v. Chen, 1991 WL 280288 at *3 (D.Mass. 1991) (Young, J.) (not deciding the applicability of c. 251 after concluding that the Federal Arbitration Act applied to a dispute involving an employee’s termination). However, Chapter 251’s title is the “Uniform Arbitration Act for Commercial Disputes.’’ (Emphasis added.) Cf. Manning v. Zuckerman, 388 Mass. 8, 13-14 (1983) (concluding that, for purposes of G.L.c. 93A, the term “commerce” does not encompass a dispute over an employment agreement between an employee and the organization employing him). Although the title of a legislative enactment cannot override the plain provisions of the law and is not conclusive, it nonetheless is relevant as a guide to legislative intent. Bellows Farms, Inc. v. Building Inspector of Acton, 364 Mass. 253, 259 (1973); Commonwealth v. Savage, 31 Mass.App.Ct. 714, 716 n. 4 (1991). Furthermore, the Legislature adopted a title different from the uniform act on which Chapter 251 is modeled; the model is entitled “Uniform Arbitration Act.” In addition, when it enacted the statute under consideration, the Legislature amended the General Laws by striking out Chapter 251, entitled simply “Arbitration,” and inserting in place thereof a new Chapter 251, entitled the “Uniform Arbitration Act for Commercial Disputes.” St. 1960, c. 374, 81. See also Report of the Commission on Uniform State Laws, 1960 House Doc. 94, at 7-8 (recommending that “the Uniform Arbitration Act, restricted to commercial arbitration, be substituted for General Laws, Chapter 251, but that labor arbitration be left to the recently enacted Chapter 150C”). Moreover, Chapter 251 consistently has been characterized as a statute governing the arbitration of commercial disputes. See, e.g., Bay State Gas Co. v. Local No. 273, 415 Mass. 72, 74 (1993); Hull Municipal Lighting Plant v. Massachusetts Municipal Wholesale Electric Co., 399 Mass. 640, 648 n.9 (1987); Minton Construct. Corp. v. Commonwealth, 397 Mass. 879, 880 (1986); Floors, Inc. v. B.G. Danis of New England, Inc., 380 Mass. 91, 94 (1980); Massachusetts Bay Transportation Authority v. Local 589, 20 Mass.App.Ct. 418, 422, rev. denied, 396 Mass. 1102 (1985); Danvers v. Wexler Construct. Co., 12 Mass.App.Ct. 160, 162-63 (1981).

The timeliness of the City’s Chapter 30A appeal is not before this court. Therefore, it is unnecessary, in the context of the pending cross-motions, to decide whether Turgeon is correct that the case before the MCAD was closed and the arbitration decision final once thirty business days after the decision of the arbitration was filed at the Commission had passed or whether the City is correct that the case before the MCAD did not close and the arbitration decision become final until the MCAD notified the parties that it declined to set aside the award. Cf. New York Times Co. v. Commissioner of Revenue, 427 Mass. 399, 402 (1998) (“Administrative agencies must generally abide by their own ‘internally promulgated polices’ as evidenced by ‘regulation, guideline, instruction sheet, or other informal agency action of general application’ ”).

Turgeon’s supplemental memorandum contains a vague reference to the enforceability of his award under the Federal Arbitration Act. The complaint, however, does not purport to seek relief under that statute, which governs arbitration provisions “in any maritime transaction or a contract evidencing a transaction involving commerce.” 9 U.S.C. §2. “Commerce” is defined as interstate commerce or commerce with foreign nations. 9 U.S.C. 81. The federal act does not apply in the absence of a showing that a party, while performing duties under an employment contract, was working in commerce, producing goods for commerce, or engaging in activity affecting commerce. Bernhardt v. Polygraphic Co. of America, Inc., 350 U.S. 198, 201 (1955).