HULL MUNICIPAL LIGHTING PLANT *vs.* MASSACHUSETTS
MUNICIPAL WHOLESALE ELECTRIC COMPANY.

Plymouth. February 4, 1987. — April 15, 1987.

Present: HENNESSEY, C.J., LIACOS, NOLAN, LYNCH, & O'CONNOR, JJ.

*Practice, Civil,* Appeal, Judicial discretion. *Electric Company. Injunction.
Arbitration,* Appropriateness of judicial proceedings.

In an action by a municipal electric company challenging certain agreements
it entered into with the defendant, the Massachusetts Municipal
Wholesale Electric Company, a public corporation existing under St.
1975, c. 775, which required the plaintiff to make monthly payments
to the defendant of a portion of the debt service on revenue bonds issued
by the defendant to finance its investment in the Seabrook Nuclear
Project, a judge did not abuse his discretion in allowing the defendant's
request for a preliminary injunction requiring the plaintiff to continue
making its monthly payments where the evidence, when considered in
light of the defendant's chance of success on the merits, was sufficient
to demonstrate that failure to issue the injunction would subject the
defendant to a substantial risk of irreparable harm and where the risk
of harm to the defendant far outweighed any risk of harm to the plaintiff.
[642-647]
A judge's consideration of the public's interest in an electric company's
continuing to make certain payments to the Massachusetts Municipal
Wholesale Electric Company, in his determination whether to grant a
preliminary injunction requiring continuation of such payments, did not
constitute an abuse of discretion where the judge's conclusions regarding
the public interest were supported by the record. [648]
There was no merit to the claim that, since a determination to grant a
preliminary injunction requires an evaluation of a party's chances of
success on the merits, a judge's allowance of a motion for a preliminary
injunction at the time arbitration proceedings were pending invaded the
province of the arbitrator. [648-649]

CIVIL ACTION commenced in the Superior Court Department
on January 23, 1986.

A motion for preliminary injunction was heard by *Robert
L. Steadman,* J.

The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.

*Jeffrey M. Bernstein* (*Robert K. Crabtree* with him) for the plaintiff.

*Daniel O. Mahoney* (*Reginald H. Howe* with him) for the defendant.

NOLAN, J. The plaintiff, Hull Municipal Lighting Plant (HMLP), appeals from an order of a Superior Court judge allowing the defendant's motion for a preliminary injunction.[1] The injunction requires HMLP to continue making payments to the defendant, Massachusetts Municipal Wholesale Electric Company (MMWEC), as required by the agreements that are the subject of this action and of the arbitration proceeding. We affirm the order.

MMWEC is a public corporation and a political subdivision of the Commonwealth created by St. 1975, c. 775, as amended. It acts as a wholesaler and sells electricity to its thirty-four members, which are municipal electric systems. By participating in MMWEC, small municipal electric systems are able to enjoy economies through MMWEC's investment in large electric generating facilities. MMWEC's investments in the generating facilities are primarily financed through the sale of tax exempt revenue bonds. MMWEC does not need governmental approval to invest in power sources, but it must secure permission from the Department of Public Utilities (department) to issue bonds. *Fitchburg Gas & Elec. Light Co.* v. *Department of Pub. Utils.,* 395 Mass. 836, 840 (1985). The bonds are secured by MMWEC's revenues, which in turn are dependent upon payments by MMWEC's members.

HMLP is a municipal electric plant which operates in the town of Hull. It purchases electricity from MMWEC and sells the electricity to approximately 5,100 retail customers. As a member of MMWEC, HMLP may participate in any or all of the projects in which MMWEC invests. HMLP is a participant in eight of MMWEC's projects, four of which are involved in

---

[1] The judge also issued an order compelling arbitration. The plaintiff does not appeal this order.

this action.[2] The four disputed projects concern MMWEC's investment in the Seabrook nuclear power plant. The parties executed a separate, but virtually identical, power sales agreement for each project. Each agreement requires HMLP to make monthly payments to MMWEC for HMLP's portion of the debt service on the bonds issued to finance the four projects. According to the agreements, payments are due regardless of whether the projects are undertaken, completed, or become operational. In addition, each agreement requires HMLP to continue making payments during the pendency of arbitration proceedings.[3] In the proceeding below, the judge issued a preliminary injunction ordering HMLP to continue making payments to MMWEC as required by the agreements. The judge found that MMWEC would be irreparably harmed if HMLP were allowed to stop making payments. He also found that MMWEC was likely to prevail on the merits. HMLP now challenges the judge's order and findings.

In reviewing the granting or denial of a preliminary injunction, the standard is whether the trial judge abused his discretion. We decide whether the judge applied proper legal standards and whether there was reasonable support for his evaluation of the factual questions. *Packaging Indus. Group, Inc.* v. *Cheney,* 380 Mass. 609, 615 (1980). The legal standard for obtaining a preliminary injunction involves a combination of the moving party's claim of injury and chance of success on the merits. *Id.* at 617. "If the judge is convinced that failure to issue the injunction would subject the moving party to a substantial risk of irreparable harm, the judge must then balance

---

[2] The parties refer to the projects as Mix No. 1, Project 4, Project 5, and Project 6.

[3] Provision 18 of the Project 6 Power Sales Agreement provides: "Any dispute under this Agreement shall be submitted to arbitration at the request of either MMWEC or the Participant. . . . The pendency of arbitration shall affect neither the obligation of the Participant to make any payment in full when due under this Agreement nor the obligations of this Agreement upon the failure of the Participant to make any payment in full when due under this Agreement." The other agreements involved in this litigation contain similar or identical provisions.

this risk against any similar risk of irreparable harm which granting the injunction would create for the opposing party." *Id.*

In applying the test announced in *Packaging Indus. Group, Inc., supra,* we first address MMWEC's claim of irreparable harm. The judge found that HMLP's failure to make its payments would interfere with MMWEC's ability to provide low cost, efficient service to its customers. The judge also found that, if HMLP were allowed to avoid payment by challenging the agreements, other municipal lighting companies might seek to avoid payment and further inhibit MMWEC's ability to provide service. The judge ruled that this type of economic loss threatened MMWEC's business. HMLP argues that even if its failure to pay will harm MMWEC, the harm is not irreparable. HMLP also argues that there was nothing in the record which supports the judge's finding that other utility companies would seek to avoid payment. We disagree with HMLP's assertions.

We recognize that HMLP's failure to make payments is an economic loss and that economic loss alone does not usually rise to the level of irreparable harm which a party must establish to obtain a preliminary injunction. See *Packaging Indus. Group, Inc., supra* at 621 (no irreparable harm found where plaintiffs introduced no evidence that defendant would be unable to pay a damage award). On the other hand, HMLP concedes that recoverable monetary loss may constitute irreparable harm where the loss threatens the very existence of the movant's business. *Wisconsin Gas Co.* v. *FERC,* 758 F.2d 669, 674 (D.C. Cir. 1985). We agree with the judge that the harm which would arise from HMLP's nonpayment is harm which would threaten the very existence of MMWEC's business. We also conclude that there was ample evidence in the record for the judge to make this determination. The judge had before him the official statement of MMWEC, which describes in elaborate detail the financing structure of the disputed projects. It is clear from the official statement that MMWEC relies solely on payments from municipal lighting companies to meet its bond obligations. The official statement also describes the consequences of a participant's failure to make its payments, one

of which is a proportional increase in the payments due from other municipal lighting company participants. We agree with MMWEC that it defies logic to think that other participants would sit idly by and continue to make payments if HMLP were permitted to stop its payments. This court and the judge below are well aware of the rising costs associated with the Seabrook nuclear power plant. See, e.g., *Fitchburg Gas & Elec. Light Co., supra* at 839, 857. MMWEC's allegations of harm are not based on bare allegations or speculation as they were in *Wisconsin Gas Co., supra* at 674-675, the case upon which HMLP primarily relies. On the contrary, if HMLP were allowed to stop its payments, it is extremely likely that other municipal lighting companies would seek to end their participation in increasingly expensive MMWEC projects relating to Seabrook. This is particularly likely when considering that the remaining participants are required to assume responsibility for payments that HMLP fails to make. MMWEC's official statement, which was part of the record before the judge, contains sufficient evidence to support these conclusions that nonpayment threatens the existence of MMWEC's business and rises to the level of irreparable harm. In fact, we note that at least one other MMWEC participant has recently attempted to end its involvement with MMWEC projects relating to Seabrook. See *Canner* v. *Groton,* Superior Court, Middlesex County, No. 85-535 (1987).

After determining that the failure to grant an injunction will result in irreparable harm to MMWEC, the judge was required to balance this against the harm which would result to HMLP if the injunction were granted. We agree with the judge that this balance cuts in favor of MMWEC. HMLP contends that it could be irreparably harmed, because, if it succeeds on the merits, MMWEC may be financially incapable of returning payments. However, whether MMWEC will be in a financial position to return payments is not determinative. "What matters as to each party is not the raw amount of irreparable harm the party might conceivably suffer, but rather the risk of such harm in light of the party's chance of success on the merits." *Packaging Indus. Group, Inc., supra* at 617. Because we find that

399 Mass. 640                                      645

Hull Municipal Lighting Plant *v.* Massachusetts Municipal Wholesale Electric Co.

MMWEC is likely to prevail on the merits, *infra,* we conclude that the balancing of the risk of irreparable harm was properly struck in favor of MMWEC.

HMLP next argues that the judge erred in concluding that MMWEC had a substantial likelihood of success on the merits of the dispute over the agreements. HMLP contends that MMWEC was required to establish a likelihood of success on each and every count of HMLP's seventeen-count complaint. On the other hand, MMWEC argues that it need only show a likelihood of success on the single issue whether the agreements require payments to be made pending arbitration. We agree with HMLP that the moving party must prove a likelihood of success as to the elements of the plaintiff's case and to asserted affirmative defenses. See *Metro-Goldwyn-Mayer, Inc.* v. *Showcase Atlanta Coop. Prods.,* 479 F. Supp. 351, 355 (N.D. Ga. 1979). Nevertheless, we conclude that there is sufficient evidence in the record that indicates MMWEC is likely to prevail during the final resolution of this dispute. We may draw our own conclusions from documentary evidence in the record. See *Packaging Indus. Group, Inc., supra* at 616.

HMLP's complaint challenges the agreements in seventeen different counts. The allegations can be grouped into three major categories: the agreements are void ab initio;[4] MMWEC violated the agreements;[5] and the agreements violate HMLP's constitutional rights.[6] There is a strong likelihood that MMWEC will prevail on each of these claims. In commenting on the material in the record, we note that the assessment of the parties' lawful rights at the preliminary stage of the proceedings may not correspond to the final determination. *Packaging Indus. Group, Inc., supra* at 616. The final outcome may differ from our initial analysis because a preliminary injunction, by definition, must be granted or denied after an abbreviated presentation of facts and the law. *Id.* HMLP's first group of claims presents challenges to the validity of the agreements. HMLP

---

[4] Counts 2, 3, 5, and 10 through 15.

[5] Counts 1, 4, 6 through 9, and 16.

[6] Count 17.

essentially argues that the agreements were induced by fraud, entered into without authority, and are unconscionable. Nothing in the record indicates that HMLP is likely to prevail on these charges. The legislative scheme allows municipal lighting plants to enter into the type of agreements that are challenged here. St. 1975, c. 775. The statute expressly authorizes the unconditional payment provisions which HMLP challenges. St. 1975, c. 775, § 6 (*a*). Because of this legislative authorization, it will be very difficult for HMLP to prevail on a theory of fraud, unconscionability, or lack of authority. Cf. *Chemical Bank v. Washington Pub. Power Supply Sys.*, 99 Wash. 2d 772, 798 (1983) (where participants lacked statutory authority to enter unconditional payment provisions), aff'd, 102 Wash. 2d 874, 896 (1984), cert. denied sub. nom. *Chemical Bank v. Public Util. Dist. No. 1 of Benton County, Wash.*, 471 U.S. 1075 (1985).

In its complaint, HMLP also argues that the statute authorizes only the town, not its lighting plant, to enter into agreements with MMWEC. HMLP is unlikely to succeed on this claim because the language of the statute does not support HMLP's interpretation. The statute authorizes MMWEC to enter into agreements with "member . . . towns having municipal electric departments." St. 1975, c. 775, § 6 (*a*). The statute further provides that "a city or town may exercise any of its power or authority contained in this act through its municipal light board." St. 1975, c. 775, § 1. A town may become a member of MMWEC by a majority vote of the town, St. 1975, c. 775, § 3 (*a*), and each town is required to designate the manager of its lighting plant or a member of its municipal light board to execute written instruments on its behalf. G. L. c. 775, § 3 (*b*). The expenses of the electric plant do not constitute general obligations of the town and are payable solely from the revenues of the electric plant. G. L. c. 775, § 6 (*b*). Such a legislative scheme does not require town approval for every power agreement entered into by the lighting plant. When the town authorized membership in MMWEC, as provided in c. 775, § 3 (*a*), it authorized its municipal light plant to enter agreements on behalf of the town. Municipal light boards have broad power to contract with other parties, see G. L. c. 164, §§ 55-56 (1984 ed.), and nothing in c. 775 or its legislative

399 Mass. 640                                               647

Hull Municipal Lighting Plant *v.* Massachusetts Municipal Wholesale Electric Co.

history indicates a legislative desire to limit that power in dealings with MMWEC.[7] The department, which must approve all bond issues by MMWEC, presumes that contracts freely entered into by the municipal light boards are valid. D.P.U. 84-152 at 75 (Feb. 27, 1986). We agree with the department that St. 1975, c. 775, allows municipal light boards to enter contracts with MMWEC on behalf of the town's ratepayers.

It is also unlikely that HMLP will succeed on its claims that it is excused from payment because MMWEC is in violation of the agreements. The thrust of HMLP's breach of contract claims is that MMWEC did not use "prudent utility practice" in performing its duties as required by the agreements. However, most of the actions taken by MMWEC under the agreements were approved by the department. Before MMWEC may issue bonds to finance a project, the department must make a determination that the purpose for the issue is "reasonably necessary." St. 1975, c. 775, § 17, as amended. In making its determination, the department has a "range of discretion" to consider the public interest and relative risk involved in a project. *Fitchburg Gas & Elec. Light Co., supra* at 842-843. In *Fitchburg Gas & Elec. Light Co.,* this court upheld the department's determination that further financing for Seabrook was not shown to be reasonably necessary. The financing projects at issue here, however, could not have been approved unless the department approved them as reasonably necessary in light of the public interest. St. 1975, c. 775, § 17. Because the department determined that the projects were reasonably necessary, it is unlikely that HMLP will succeed in proving that MMWEC's actions regarding the challenged projects were inconsistent with "prudent utility practice." The record before us also indicates that MMWEC has a strong likelihood of success in showing that it has been faithful in performing the other contractual duties that HMLP urges have been violated.[8]

---

[7] We note that, since 1980, at least eight bills in the Legislature have failed to pass which would have granted municipalities final review over agreements entered into with MMWEC. See *Canner* v. *Groton,* Superior Court, Middlesex County, No. 85-535, *supra* at 11-12 & n.14.

[8] HMLP's argument that the agreements impose an unconstitutional tax on the taxpayers of Hull is also likely to fail. The payments owed by HMLP

HMLP also argues that the court erred in concluding that the public interest weighed in favor of granting the injunction. The judge found that the enabling statute created a delicately balanced scheme under which a utility cooperative may function for the public benefit. The judge concluded that the public interest would be harmed unless HMLP was ordered to continue making payments. In the Federal system, a court must weigh the public interest in determining whether to grant a preliminary injunction. *Planned Parenthood League* v. *Bellotti,* 641 F.2d 1006, 1009 (1st Cir. 1981). In Massachusetts, however, a judge need not consider (except in an appropriate case) the public interest in ruling on a motion for preliminary injunction. The standard set forth in *Packaging Indus. Group, Inc., supra* at 617, simply requires the judge to consider the potential for irreparable harm in light of the party's chance of success on the merits. In the appropriate case, however, the risk of harm to the public may be considered. *Brookline* v. *Goldstein,* 388 Mass. 443, 447 (1983). The judge's consideration of the public's interest does not constitute an abuse of discretion where, as here, the judge's conclusions regarding the public interest are supported by the record.

HMLP's final claim is that the preliminary injunction order is inconsistent with the order compelling arbitration. HMLP contends that, because the determination regarding the injunction requires an evaluation of the chances of success on the merits, the injunction order impermissibly invades the province of the arbitrator. We rejected an analogous claim in *Salvucci* v. *Sheehan,* 349 Mass. 659, 663 (1965) (bill to reach and apply permitted where the ultimate dispute was to be resolved through arbitration). In *Salvucci,* we noted that the Uniform Arbitration Act, upon which the Massachusetts act is based, intentionally omitted a section which would have expressly allowed courts to order pre-judgment relief.[9] *Id.* The section

---

are not taxes but are payments required under valid contracts authorized by the Legislature.

[9] Commercial arbitration, which was ordered by the judge below, is governed by G. L. c. 251 (1984 ed.). Collective bargaining agreements to arbitrate are governed by G. L. c. 150C (1984 ed.).

was omitted because it would have authorized labor injunctions. *Id.* at 664. The omission of the pre-judgment relief section, therefore, has no applicability in disputes where no collective bargaining agreement is involved. *Id.* In the commercial arbitration context, an order compelling arbitration does not preclude a court from awarding necessary pre-judgment relief, so long as that relief is ordered in accordance with the appropriate legal standard.

We recognize that our evaluation of the parties' chances of success may have some influence on the result of the now pending arbitration proceedings. Our analysis, however, is based on an "abbreviated presentation of the facts and the law" and our "assessment of the parties' lawful rights at the preliminary stage of the proceedings may not correspond to the final judgment." *Packaging Indus. Group, Inc., supra* at 616. We conclude that the determination of a motion for preliminary injunction does not invade the province of the arbitrator. The order allowing MMWEC's motion for preliminary injunction is affirmed.

*So ordered.*