Canner *v.* Groton.

CARL CANNER & others[1] *vs.* TOWN OF GROTON & others.[2]

Middlesex.  April 6, 1988. — July 12, 1988.

Present: HENNESSEY, C.J., LIACOS, ABRAMS, NOLAN, & LYNCH, JJ.

*Electric Company. Municipal Corporations,* Electric plant, Town meeting, Contracts.

Once a town, by vote of its town meeting, became a member of Massachusetts Municipal Wholesale Electric Company, a public corporation existing under St. 1975, c. 775, the town meeting was without power to limit the municipal light board's authority, pursuant to that statute, to enter into contracts with the corporation. [807-808]

Even if provisions of G. L. c. 164, § 56C, requiring that certain contracts on behalf of a municipal lighting plant be filed with the city or town auditor, are applicable to a contract pursuant to St. 1975, c. 775, between a town's light board and Massachusetts Municipal Wholesale Electric Company, failure of the board to file such a contract with the town auditor would not render the contract void. [808-809]

CIVIL ACTION commenced in the Superior Court Department on January 28, 1985.

The case was heard by *Thomas R. Morse, Jr.,* J., on motions for summary judgment.

The Supreme Judicial Court granted requests for direct appellate review.

*Jeffrey M. Bernstein (Charles Harak* with him) for the plaintiffs.

*Daniel O. Mahoney (Maurice J. Ferriter* with him) for Massachusetts Municipal Wholesale Electric Company.

*Peter D. Cole,* Town Counsel, for the town of Groton, was present but did not argue.

---

[1] Twenty-nine other residents of Groton.

[2] Groton electric light department, Groton electric light commissioners, Groton electric light department manager, and Massachusetts Municipal Wholesale Electric Company.

*Reginald C. Lindsay*, for Groton electric light department, was present but did not argue.

*Steven H. Goldberg*, Assistant Attorney General, for the Attorney General, amicus curiae, submitted a brief.

LYNCH, J. In this appeal, thirty residents of the town of Groton (Groton ratepayers) claim that, by virtue of the votes under two articles of the warrant for a special town meeting, a contract — known as the Project No. 6 power sales agreement (Project No. 6 PSA) — between the town and the Massachusetts Municipal Wholesale Electric Company (MMWEC), must be declared null and void.[3] The defendants, who, in addition to MMWEC, include the town and current or former officials of the town's light department, respond that the town meeting votes on which the Groton ratepayers rely are themselves null and void because they conflict with St. 1975, c. 775 (c. 775), and would defeat its legislative purpose. A judge in the Superior Court granted summary judgment in favor of the defendants on June 10, 1987, invalidating the two town meeting votes referred to above. The Groton ratepayers appealed and we granted the parties' applications for direct appellate review. We affirm.

The defendant MMWEC is a public instrumentality of the Commonwealth created under c. 775. Pursuant to authority conferred by that statute, MMWEC has developed a bulk power supply system consisting of ownership interests in various electric power facilities which serve, or are planned to serve, the New England area. MMWEC's members include a number of Massachusetts municipalities. Any Massachusetts municipality may become a member by majority vote of the municipality as defined in G. L. c. 44, § 1 (1986 ed.). C. 775, § 3 (*a*). MMWEC is authorized to contract to sell to its members and others, and its members and others may contract to purchase "all or a portion of the capacity and output of one or more specific electric power facilities." *Id.* at § 6 (*a*).

---

[3] The plaintiffs concede that other claims raised in their complaint were disposed of by our decision in *Hull Mun. Lighting Plant* v. *Massachusetts Mun. Wholesale Elec. Co.*, 399 Mass. 640 (1987).

MMWEC finances its power supply system through the issuance of bonds. The principal and interest on the bonds are payable from and secured by a prior lien upon and pledge of certain of MMWEC's revenues. MMWEC's revenues are derived primarily from PSAs between MMWEC and participants such as the Groton electric light department. Under a PSA, MMWEC sells, and each participant purchases, a share of a project's capability, which is defined as "the amounts of electric capacity and energy, if any, which the 'Project' is capable of producing at any particular time."[4] Each participant is required to pay monthly its share of MMWEC's costs related to the project, regardless whether the project is completed or operating and notwithstanding any subsequent suspension or interruption of output. These payments come from each participant's electric plant revenues as an operating expense rather than as a general obligation of the town. C. 775, § 6 (*b*).

The town of Groton became a member of MMWEC on April 26, 1976, of its own volition, and has remained a member since that time. The town operates a municipal electric system through its light department. The light department is managed by a board of three municipal light commissioners (light board) and a manager appointed by the board. The town participates in several MMWEC projects through PSAs executed on the town's behalf by the manager of the light department, acting pursuant to authorization of the light board. None of these PSAs was submitted to the town's voters for approval.

The Project No. 6 PSA was executed and delivered to MMWEC by the manager on September 27, 1979, pursuant to a vote of the light board on September 12, 1979.[5] At a special town meeting on October 2, 1979, the town voted under Article 1 of the warrant "to instruct the Groton Electric

[4] A "project" is MMWEC's ownership interest in specified electric power facilities.

[5] By its terms, Project No. 6 PSA was not effective until "execution and delivery of [PSAs] by MMWEC and Participants whose Participants' Shares total 100.0%." The plaintiffs allege that, at the time of the town meeting votes, MMWEC did not have commitments for 100% of the participant shares of the project.

Light Department Commissioners not to purchase any owner-ship or interest in the Seabrook Nuclear Project 6, directly or indirectly, notwithstanding any action taken by said commis-sioners since September 11, 1979." Under Article 2 of the warrant, the town voted "to require the Groton Electric Light Department Commissioners to obtain authorization by a two-thirds vote of Town Meeting . . . prior to entering into any power sales agreement with [MMWEC]." This vote provided further that it "is to be binding on [the commissioners] not-withstanding any provisions to the contrary in Chapter 775 of the Acts of 1975."

1. The Groton ratepayers argue that the town meeting votes are a valid exercise of the town's home rule authority under § 6 of the Home Rule Amendment, art. 89 of the Amendments to the Massachusetts Constitution, and § 13 of the Home Rule Procedures Act, G. L. c. 43B (1986 ed.). In general, these provisions reserve to towns and cities the right to enact local ordinances or by-laws which are not inconsistent with the State Constitution or State legislation. *Bloom* v. *Worcester,* 363 Mass. 136, 155-156 (1973). We reject the plaintiffs' argument because we conclude that home rule principles are inapplicable to the present situation.

The conflict here is not between local power and State power, but rather is between two organs of local power — town meeting and a town's light board. The question presented concerns the scope of authority of a local light board to enter into certain contracts under c. 775 and the power of town meeting, if any, to limit that authority. The complete answer to this question was clearly forecast in the recently-decided case of *Hull Mun. Lighting Plant* v. *Massachusetts Mun. Wholesale Elec. Co.,* 399 Mass. 640 (1987).

In *Hull,* the plaintiff had argued, inter alia, that certain agreements between the town's lighting plant and MMWEC were void ab initio because the lighting plant lacked authority to enter into the agreements. We observed that c. 775's "legis-lative scheme does not require town approval for every power agreement entered into by the lighting plant. When the town authorized membership in MMWEC, as provided in c. 775,

§ 3 (*a*), it authorized its municipal light plant to enter agreements on behalf of the town. Municipal light boards have broad power to contract with other parties, see G. L. c. 164, §§ 55-56 (1984 ed.), and nothing in c. 775 or its legislative history indicates a legislative desire to limit that power in dealings with MMWEC." *Id.* at 646-647. Thus, *Hull* teaches that, while c. 775 allocates to a town meeting the authority to decide whether a town will become a member of MMWEC, once the town has become a member, the statute allocates to the light board the authority to enter into PSAs with MMWEC. Through the two votes at issue here, Groton's town meeting has sought to limit the town light board's "broad power" to contract with MMWEC, which it had previously granted, a result squarely prohibited by c. 775, as construed in the *Hull* case. It follows from *Hull* that, once having joined MMWEC and having created a light board, the town may not seek to limit that board's proper authority after the fact. Therefore, the two town meeting votes at issue here do not invalidate the Project No. 6 PSA.[6]

2. *G. L. c. 164, § 56C.* The plaintiffs claim that the trial judge erred in ruling that the light board was not required to file a copy of the Project No. 6 PSA with the town auditor, pursuant to G. L. c. 164, § 56C (1986 ed.).[7] The judge reasoned

---

[6]Therefore, we do not reach the question whether the votes, if adopted before the fact, would be inconsistent with St. 1975, c. 775. We note, however, that the town meeting votes were never submitted to the office of the Attorney General, whose approval is a necessary prerequisite to the enactment of a valid by-law. G. L. c. 40, § 32 (1986 ed.). *Ballantine* v. *Falmouth*, 363 Mass. 760, 765 (1973). *Concord* v. *Attorney Gen.*, 336 Mass. 17, 22 (1957). Somewhat curiously, the Attorney General argues, as an amicus curiae, that the defendants should be estopped from asserting the failure to file as a ground for invalidity, because it was the town's responsibility to ensure that the votes were filed. Even were we to accept this argument as to the town, it fails to estop MMWEC. We conclude, therefore, that the failure to file the votes also prevented their taking effect as by-laws.

[7]General Laws c. 164, § 56C, provides, in pertinent part: "Every municipal light commission or manager thereof, who makes or executes a contract on behalf of a municipal lighting plant, where the amount involved is one thousand dollars or more, shall furnish said contract or a copy thereof to the

that the light board was exempt from § 56C's filing require-
ments because, under c. 775, § 19 (*c*), "[e]xcept as otherwise
expressly provided in this act, the provisions of [c. 164] shall
not apply to [MMWEC]."

Whether or not c. 164 applies to the light board, the light
board's failure to file the PSA does not, in and of itself, render
the contract null and void. As the judge below correctly noted,
§ 56C itself provides no such relief. Rather, the statute declares
that "[a] city or town auditor, municipal light commissioner
or manager wilfully failing to comply with this section shall
be punished by a fine of not less than ten nor more than one
hundred dollars." Nowhere in the statute does it say that the
effect of a failure to file is to render the contract void. Therefore,
we reject the plaintiffs' claim under § 56C.

3. *Disposition.* As noted, note 6, *supra*, it is not necessary
to reach the questions whether the articles are inconsistent with
c. 775 and thus invalid under home rule principles and whether
the filing and public inspection requirements of G. L. c. 164,
§ 56C, apply to the light board. Therefore, aside from the
portions of the judgment which purport to resolve those ques-
tions, the judgment is affirmed.

*So ordered.*

---

city or town auditor within one week after its execution. . . . A city or
town auditor, municipal light commissioner or manager wilfully failing to
comply with this section shall be punished by a fine of not less than ten
nor more than one hundred dollars."