Gershengorn, J.
Plaintiff John R. Allen (“plaintiff’), sublessee of Subway Real Estate Corp. (“Subway”), moves for a preliminary injunction against defendant R.K. Associates, Inc. (“defendant”). Plaintiff seeks to enjoin defendant from leasing certain commercial property to a developer of a Panera Bread Bakery Café (“Panera”), as such a lease would allegedly violate the terms of a lease plaintiff and defendant agreed to in 1995. Defendant argues that its proposed lease to Panera does not violate the terms of its lease with plaintiff. For the following reasons, plaintiffs motion is ALLOWED.
FACTUAL BACKGROUND
In November 1994, defendant executed alease with Subway for commercial property defendant owned in Marlborough. In June 1995, Subway executed and delivered a sub-lease of the premises to plaintiff, who had previously reached a franchise agreement with Subway. Plaintiffs wife, Lucy Lu Allen, currently operates plaintiffs Subway sandwich shop franchise at that Marlborough location, as she has done since 1995. Mrs. Allen’s operation of the Marlborough Subway franchise is her full-time job and only source of income.
The lease that Subway and defendant agreed to in 1995 states that
Landlord agrees not to . . . lease, let, use or permit to be used, any property owned or controlled by it within one mile of the leased premises now or at any time during the period of this lease or any extension to any tenant or subtenant whose main principle [sic] business is the sale of submarine sandwiches or Deli-type sandwiches, such as Miami Sub, DeAngelo’s, Blimpies, Kelly’s Roast Beef, Schlotzky . . . [Notwithstanding] the above, Landlord shall have the right to lease space to a pizza restaurant and/or Bruegger’s Bagel or to any other restaurant whose main principle [sic] business is not the sale of submarine or deli-type sandwiches.
(Emphasis added.) The lease contains no definition of “main principle[1] business” or “Deli-type sandwiches.”
Sometime in the spring of 2004, defendant began negotiations with Panera to rent commercial space located in the same commercial shopping center as plaintiffs Subway franchise.[2] In response, plaintiff hired an investigator to observe Panera stores to determine whether Panera’s proposed use of defendant’s commercial space would violate the terms of the Subway lease. After deciding that a lease with Panera would violate the terms of the Subway lease, plaintiff filed its verified complaint for equitable relief on June 29, 2004.[3]
According to defendant, the Panera store is not scheduled to open until September 2004. Defendant claims that it and Panera have each expended considerable time and money in preparing for Panera’s proposed lease and business operations.
DISCUSSION
Preliminary Injunction Standard
Courts must consider three factors when deciding motions for preliminary injunctions: (1) plaintiffs like *176 lihood of success on the merits; (2) the risk of irreparable harm to the plaintiff if the motion for an injunction is denied; and (3) the irreparable harm to the defendant if the motion for an injunction is allowed. Packaging Industries Group, Inc. v. Cheney, 380 Mass. 609, 617 (1980).
Disposition of plaintiffs motions depends on whether the proposed Panera store’s “main principal business” is the sale of “Deli-type” sandwiches. This court has little difficulty finding that Panera is engaged in the sale of “Deli-type” sandwiches.[4] Thus, this court must determine the meaning of “main principal” business. As the plaintiffs lease contains no definition of “main principal business,” the court must ascertain the ordinary meanings of those terms.
Main has been defined as an adjective as “most important; principal,” and as a noun as “the chief or largest part.” The American Heritage Dictionary of the English Language (4th Ed. 2000). Principal has been defined as “first, highest, or foremost in importance, rank, worth, or degree; chief.” Id.
According to Panera’s national sales data, as provided by defendant, sandwich sales accounted for 25 percent of Panera’s sales in 2003 and 23.6 percent in 2004. However, Panera lists sales figures for paninis separately from sandwich sales figures; under the broad definition of “deli” paninis clearly are to be considered deli sandwiches.[5] When panini sales figures are combined with sandwich sales, those numbers are 31 percent in 2003 and 30.6 percent in 2004. The next highest sales item figures are listed in a category named “Not Available,” which appears to be combined sales of coffee, sodas, etc., at 26.5 percent in 2003 and 26.6 percent in 2004. After the Not Available category, soup comprises Panera’s largest sales item, at 18.3 percent in 2003 and 19 percent in 2004.
It is clear that Panera has a diverse array of sales items, including sandwiches, soups, salads, bread, bagels and cream cheese, and the miscellaneous items that apparently are lumped into the “Not Available” category. However, according to Panera’s own data, deli sandwichessandwiches and paninisaccount for the largest percentage of Panera’s sales. In other words, deli sandwiches are the “main” or “principal” sales items on Panera’s menu. Under the terms of Subway’s lease with defendant, plaintiff has established a likelihood of success on the merits that Panera’s sale of deli-type sandwiches is its main principal business, and is therefore covered by the restrictions in the lease.
In balancing the potential harm to each party in light of plaintiffs likelihood of success on the merits, this court finds that the potential harm to plaintiff outweighs the potential harm to defendant. Plaintiff s Subway shop is the only source of income for his wife and constitutes her full-time job; plaintiff submitted data that the profitability of his store would disappear if he were to lose only 28 customers per day. Allowing a company to compete with plaintiff in violation of the plain terms of the Subway lease would effectively eliminate or greatly reduce plaintiff s ability to operate a profitable location.[6]
While this court does not doubt that defendant will suffer some harm if an injunction is granted, such as financial losses from its negotiations with Panera and expenses in finding another lessee for its space, that harm must be considered in light of the fact that defendant’s proposed lease with Panera would likely violate the plain terms of the restriction in the Subway lease. Defendant is allowed to lease its space to a wide variety of stores, including restaurants, as long as the “main principal” business of those stores is not the sale of deli-type sandwiches. And while defendant argues that its lease with Subway was only intended to preclude its leasing of commercial space to Subway-style sub and sandwich shops, and not more item-diverse, café-style shops like Panera, that argument does not change the fact that the plain terms of the Subway lease preclude the leasing of commercial space to any business whose main principal business is deli-sandwich sales. Defendant could have used more specific language or definitions for the terms in the lease, but having failed to do so is bound by the language that it ultimately agreed to.
As Panera’s sales data establishes the principal significance of its deli-type sandwich sales, plaintiff has established a likelihood of success on the merits and the probability that plaintiff will suffer more harm if the injunction is not granted than will defendant if the injunction is granted.
ORDER
For the foregoing reasons, plaintiffs motion for a preliminary injunction is ALLOWED. It is hereby ORDERED that defendant R.K. Associates, Inc. is preliminarily enjoined from leasing its Marlborough commercial space, currently home to Dress Barn, to Panera Bread Bakery Café.

This word is misspelled in the lease language; the court will use its proper spelling throughout the remainder of this decision.

At that time the space was occupied by a Dress Bam retail clothing store.

The verified complaint contains four counts: (I) action for injunction; (II) misrepresentation; (III) violation of G.L.c. 93A; and (IV) breach of contract. The misrepresentation claim stems from communications between defendant and plaintiffs attorney, before the verified complaint was filed, in which defendant allegedly misrepresented the proportion of sandwich sales to overall sales at Panera stores.

Defendant submitted a Panera menu that lists a variety of sandwiches Panera sells. As the language of the lease contains no definition of “Deli-type” sandwiches, this court applies the ordinary meaning of that term and finds that Panera’s sandwiches fall under the ordinary definition of “deli." See Kobayashi v. Orion Ventures, 42 Mass.App.Ct. 492 (1997), for a discussion of the definition of “deli.”

A panini is simply a particular Italian style of deli sandwich.

defendants argue that an injunction is inappropriate where only monetary loss is involved. While plaintiff certainly alleges that competition with Panera will lead to economic losses, the thrust of his allegations are that the economic losses plaintiff will suffer from competing with Panera (in violation of the lease terms) will be so severe that his business could not survive. Such potential harm is subject to the remedy of an injunction. See Hull Municipal Lighting Plant v. Massachusetts Municipal Wholesale Electric Co., 399 Mass. 640, 643 (1987) (while economic loss alone does not usually constitute irreparable harm, “recoverable monetary loss may constitute irreparable harm where the loss threatens the very existence of the movant’s business”).