van Gestel, Allan, J.
This matter is before the Court on Entercom’s Emergency Motion for Preliminary Injunction, Paper #24. By this motion the defendant and plaintiff-in-counterclaim, Entercom Boston, LLC (“En-tercom”), seeks to prevent the defendant-in-counterclaim Greater Boston Radio, Inc. (“GBR”) “from (i) discussing with Howard L. Carr . . . (’Carr’) or his agents the possibility of hiring . . . Carr to act as a broadcaster on WTKK-FM and/or any other radio station GBR owns and (ii) making any public statements that... Carr will or may work as a broadcaster on WTKK-FM or any other radio station GBR owns at any time before September 20, 2012.”
The motion, which is opposed, is supported by two affidavits: (1) Affidavit of Shepard Davidson, Paper #25; and (2) Affidavit of Julie Kahn, Paper #26.
The Davidson Affidavit is a form of transmittal affidavit attaching an array of 12 different documents, of a varying nature, relating to actions taken by Carr, communications between counsel for Carr, GBR and Entercom, part of a deposition transcript of the deposition of Philip L. Redo, and two internet publications relating to rulings on this case.
The Kahn Affidavit, after identifying Kahn as Vice President/Market Manager for the Boston Metropolitan area of Entercom, contains two substantive paragraphs that read as follows:
Based on my personal experience in dealing with advertisers on the radio program hosted by... Carr over the past seven years, I have no doubt that Entercom will lose substantial sums of money if... Carr leaves WRKO to broadcast his radio program on WTKK. Nevertheless, I believe it would be difficult or impossible for Entercom to prove how much revenue it would lose in this .regard.
A number of businesses already have informed En-tercom that they will not continue advertising with WRKO in light of the publicity indicating that... Carr was or might be moving to WTKK. Likewise, while Entercom from time to time has added advertisers to . . . Carr’s program over the years, Entercom is unlikely to be able to establish what future advertisers it was deprived of because... Carr left in favor of WTKK.
The background history of the contractual relationship between Carr and Entercom and the potential for Carr leaving Entercom’s WRKO for GBR’s WTKK are known by the parties and set forth in this Court’s Memorandum and Order on Cross Motions for Judgment on the Pleadings and for Summary Judgment, Paper #19, issued on September 19, 2007 [23 Mass. L. Rptr. 138). Full familiarity therewith is presumed.
Ongoing conversations and communications between Carr and GBR and public statements by GBR regarding the possibility of Carr leaving WRKO for WTKK have caused Entercom to level charges against GBR in the nature of tortious interference with contractual relations and violations of G.L.c. 93A. Claiming economic harm, Entercom wants this Court to enjoin those communications and public announcements.
DISCUSSION
In order to prevail on its request for preliminary injunctive relief, Entercom bears the burden of showing: (1) its likelihood of success on the merits; (2) that it will suffer irreparable harm if the injunctive relief sought is not granted; and (3) that its harm, without the injunction, outweighs any harm to GBR from being enjoined. GTE Products Corp. v. Stewart, 414 Mass. 721, 722-23 (1993); Packaging Indus. Group, Inc. v. Cheney, 380 Mass. 609, 616-17 (1980).
“Economic harm alone . . . will not suffice as irreparable harm unless ‘the loss threatens the very existence of the movant’s business.’ Hull Mun. Lighting Plant v. Mass. Mun. Wholesale Elec. Co., 399 Mass. 640, 643 (1987).” Tri-Nel Management, Inc. v. Board of Health of Barnstable, 433 Mass. 217, 227-28 (2001). But see Boston Athletic Ass’n v. International Marathons, Inc., 392 Mass. 356, 362 (1984), for a narrow exception to this rule.
*170 Injunctive relief either by way of a temporary restraining order or by a preliminary injunction implicates a power of equity which should be exercised delicately. It should not be exercised routinely and the Court should refuse to grant such relief unless the circumstances require it.
Nolan and Sartario, Equitable Remedies, 31 M.P.S. sec. 139 (1993).
Noting the irony — now for the second time in this case’s short life — of parties in the media business attempting to utilize impoundment[2] to bar the public’s access to the innards of this case and preliminary injunctive relief[3] to prevent one person or entity from speaking to another, the Court assays Entercom’s “emergency” request.
In order to prevail in this case, Entercom will be “required to prove (1) a business relationship or contemplated contract for economic benefit with a third parly; (2) [GBR’s] knowledge of such a relationship; (3) [GBR’s] interference with it through improper motive or means; and (4) [Entercom’s] loss of advantage directly resulting from [GBR’s] conduct.” Adcom Products, Inc. v. Konica Business Machines USA, Inc., 41 Mass.App.Ct. 101, 104 (1996). See United Truck Leasing Corp. v. Geltman, 26 Mass.App.Ct. 847, 855 (1989), S.J.C., 406 Mass. 811, 816 (1990). See also Chemawa Country Golf, Inc. v. Wnuk, 9 Mass.App.Ct. 506, 509-10 (1980).
The first two elements — a contract for economic benefit with a third parly, Carr, and GBR’s knowledge of that contract — are clear. It is elements three and four that are less apparent. Do GBR’s conversations with Carr or their public statements about Carr’s intentions or GBR’s desires constitute interference through improper motive or means? Has Entercom sustained any loss of advantage directly resulting from GBR’s conduct? At this time the record is a bit too sparse to enable this Court to make a reliable assessment of Entercom’s likelihood of success thereon.
In short, this Court has doubt that Entercom has met the first prong of its requirements for injunctive relief.
Additionally, the Court concludes that Entercom has definitely failed to show irreparable harm. Kahn’s short affidavit does not carry the day. She simply says that she has “no doubt that Entercom will lose substantial sums of money if . . . Carr leaves WRKO to broadcast his radio program on WTKK” and she “believes] it would be difficult or impossible for Entercom to prove how much revenue it would lose in this regard.” She does not tell the Court that the economic harm she fears threatens the very existence of Entercom’s business. This latter condition, however, must exist for the harm to be considered irreparable. Hull Mun. Lighting Plant v. Mass. Mun. Wholesale Elec. Co., 399 Mass. 640, 643 (1987); Tri-Nel Management, Inc. v. Board of Health of Barnstable, 433 Mass. 217, 227-28 (2001).[4]
Nor can Entercom fall back on the narrow economic harm exception provided by Boston Athletic Ass’n v. International Marathons, Inc., 392 Mass. 356, 362 (1984). GBR, unlike the defendant in Boston Athletic Ass’n, is not about to dispose of all of its assets, fade away and be unavailable for collection of whatever damages may be proven.
Nor, also, is this Court of the present view that any damages will be so difficult to prove as to make the effort impossible. After all, although Entercom’s damages if it establishes GBR’s tortious interference must be “capable of ascertainment by reference to some definite standard,” H.D. Watts Co. v. American Bond & Mortgage Co., 267 Mass. 541, 552 (1929), “an element of uncertainty” as to the amount does not bar recovery. National Merchandising Corp. v. Leyden, 370 Mass. 425, 430 (1976). A “reasonable approximation” of damages caused by a defendant’s misconduct is enough. Id. Indeed, the SJC has concluded that the amount of potential winnings by a race horse are not too speculative to prove as damages in a breach of contract case. See Rombola v. Cosindas, 351 Mass. 382, 385-86 (1966) (horse trainer sued owner for percentage of gross purse horse would have won if owner had not removed horse from racing meets). Entercom has not shown an absence of an adequate remedy at law.
Additionally, of course, while there has been a lot of sound, fury and, by some, public bombast, Carr has yet to leave WRKO for WTKK. Rather, he has abided by the conclusions reached by this Court on September 19, 2007, at least insofar as not bolting to WTKK. What present WRKO advertisers are doing while this matter plays out does not support the injunctive relief sought.
Entercom’s claims against GBR for tortious interference with' its contractual relationship with Carr, and any G.L.c. 93A violations that are grounded upon such tortious activity, are matters that can be satisfied by monetary damages, which may be substantial, but clearly appear payable by GBR, if awarded.
ORDER
For the foregoing reasons, Entercom’s Emergency Motion for Preliminary Injunction, Paper #24, is DENIED. This denial is not to be considered as establishing the law of this case, nor is it with prejudice to a refiling of a request for injunctive relief if a stronger record can be provided.

In H.S. Gere & Sons v. Frey, 400 Mass. 326, 330-31 n.11 (1987), the SJC quoted one of its most famous Justices as follows: “As early as 1884, Justice Holmes noted that ‘[i]t is desirable that the trial of causes should take place under the public eye, not because controversies of one citizen with another are of public concern, but because it is of the highest moment that those who administer justice should always act under the sense of public responsibility, and that every citizen *171 should be able to satisfy himself with his own eyes as to the mode in which a public duty is performed.’ ” See Cowley v. Pulsifer, 137 Mass. 392, 394 (1884).

“In cases of torts perpetrated by means of spoken or written words, the public interest in the freedom of speech frequently comes into conflict with the public interest in the prevention of tortious harms. Adjustments of this conflict must be made as best they can, in light of the circumstances of each case, and in light of the basic policies underlying each public interest ...” Restatement: Torts, §942 (pp. 719-20). Krebiozen Research Foundation v. Beacon Press, Inc., 334 Mass. 86, 99 (1956).

At oral argument, Entercom pointed to that part of section of G.L.c. 93A, §11, that reads: “Such, person, if he has not suffered any loss of money or property, may obtain such an injunction if it can be shown that the aforementioned unfair method of competition, act or practice may have an effect of causing such loss of money or property.” Whether that part of §11 still has legs is questionable. See, e.g., Hershenow v. Enterprise Rent-A-Car of Boston, Inc., 445 Mass. 790, 799-802 (2006). In any event, it makes no difference here.