Wilkins, Douglas H., J.
On November 20, 2012, the Court heard the Motion of Tara S. Mintz, personal representative of the estate of Patricia Louise Gurka for Temporary Restraining Order (“Motion”). In addition to arguments of counsel, the Court heard live testimony from Anna Grenier and received two exhibits in evidence.
PRELIMINARY FINDINGS
Based upon the evidence presente'd at the hearing on the Motion, the docket of this case and the likely evidence at trial, the Court makes the following preliminary findings for purposes of preliminary relief only. Patricia Louise Gurka died on August 11, 2012 at UMass Memorial Medical Center in Worcester. Tara S. Mintz was appointed personal representative of her estate. The complaint alleges that the defendant Robert Grenier owned and operated a motor vehicle, which, on August 11,2012, left the roadway, struck a utility pole and rolled over, causing personal injuries to and the death of Patricia Louise Gurka. Robert was taken into custody for his role in the accident a few days later. Anna Grenier attended a court proceeding (presumably a bail hearing or probation surrender hearing) in connection with the charges against Robert, at which time she saw the decedent’s family and knew of her death. This lawsuit was filed on September 28, 2012.
On August 22, 2012, Anna Grenier contacted her attorney regarding Robert’s failure to pay child support and certain other obligations imposed by a divorce agreement approved one year earlier. Under that Agreement, among other things, Robert retained the right to live at the property at 14 Kirby Lane, North Smithfleld, Rhode Island (“Property”).
When she contacted her lawyer on August 22, 2012, Anna knew that a lawsuit against Robert arising out of the accident was possible. At that time also, under the 2011 divorce agreement, Mr. Grenier owed her $7,000 to reimburse a credit card debt, $30,000 for her share of the marital home and unpaid child support at the rate of $1,748 per month (currently in excess of $12,000). Her attorney drafted a First Amendment of the divorce agreement under which Robert would sell Anna a 1996 Ford and 1998 Harley Davidson motorcycle to discharge child support in the amount of $12,292 and would sell her the marital home to settle the other debts. Anna would be responsible for the home equity line of credit on the home. The First Amendment to the Agreement also purported to waive Anna’s interest in the 2010 Chrysler vehicle involved in the accident, which was worthless as it was a total loss from the August 2012 accident. That provision and (more importantly) the apparent disparity between the $37,000 and the value of Robert’s interest in the Property, suggest that the plaintiff can likely prove that the August 2012 First Amendment to the Agreement did not provide adequate consideration to Robert for conveyance of his interest in the marital home and that the likely reason was the parties’ understanding that Robert was likely to lose the home anyway because of his potential liability to the plaintiff in this case. I infer as a preliminary matter that the parties, knowing that Robert’s continued ownership of the marital home was tenuous, decided that it was preferable for Anna to acquire it rather than to lose it to the plaintiff here. Material to that inference is that Anna continues to visit Robert in jail, where he is being held in connection with the August 2012 accident. It appears that Anna and Robert have a relatively civil and cordial relationship despite their divorce and his subsequent noncompliance with the August 2011 divorce settlement.
Robert signed the First Amendment to the Divorce Agreement, which Anna’s attorney presented to the Providence, Rhode Island Probate Court in connection with Robert’s alleged failure to comply with the August 2011 agreement. That court held a hearing on October 17, 2012, attended by Anna Grenier and her attorney. The court approved the amendment. By October 17, 2012, Anna Grenier knew that Robert Grenier had been sued over the August 11, 2012 accident. There is no evidence that the Rhode Island court was informed of the plaintiffs claim in this case against Robert.
Anna Grenier placed the home on the market in mid-October, at which time Robert still had a 1/2 interest in the Property. She testified that the Property is on the market for approximately $190,000 and is worth between $170,000 to $180,000. She owned a 1/2 interest in the property prior to the deed she and Robert signed.
On November 2, 2012, the Worcester Superior Court issued a short order of notice to defendant Robert Grenier to appear at a preliminary injunction hearing set for November 8, 2012 regarding Property. Mr. Grenier had notice of the hearing by service through the Worcester County Sheriffs Office at his address at 5 PaulX. Tivnan Drive West Boylston. On November 6,2012, Anna Grenier signed the deed at her attorney’s office. She attempted to record it at the Town Hall, but could not do so because it was election day. She returned on November 7 and recorded the deed. At some unspecified time — possibly before she signed the deed to the Property — Anna learned of the upcoming hearing in this Court. On November 2,2012, Robert Grenier signed the deed to the Property. The Court issued the preliminary injunction on November 8, 2012.
Count IV of the complaint seeks a declaratory judgment against both defendants, alleging that the conveyance of the property at 14 Kirby Lane, North Smithfleld, Rhode Island to and by the defendant Anna Grenier was made for the purpose of defrauding the plaintiff in this action.
CONCLUSIONS
A party seeking a preliminary injunction[1] must prove a likelihood of success on the merits of the case and a balance of harm in its favor when considered in light of the likelihood of success. Packaging Indus. Group, Inc. v. Cheney, 380 Mass. 609, 616-17 (1980).
*586 At issue is the plaintiffs likelihood of success on Count VI, the fraudulent conveyance claim. Section 6 of G.L.c. 109A provides in relevant part:
Section 6. (a) A transfer made or obligation incurred by a debtor is fraudulent as to a creditor whose claim arose before the transfer was made or the obligation was incurred if the debtor made the transfer or incurred the obligation without receiving a reasonably equivalent value in exchange for the transfer or obligation and the debtor was insolvent at that time or the debtor became insolvent as a result of the transfer or obligation.
(b) A transfer made by a debtor is fraudulent as to a creditor whose claim arose before the transfer was made if the transfer was made to an insider for an antecedent debt, the debtor was insolvent at that time, and the insider had reasonable cause to believe that the debtor was insolvent.
Here, the plaintiffs right to payment pursuant to her wrongful death claim is not reduced to judgment, and is unliquidated, disputed and contingent. However, it still qualifies under G.L.c. 109A, §2, which defines “Claim,” as “a right to payment, whether or not the right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured.”
The plaintiffs claim arose before the First Amendment and before the deed conveying the Property to Anna. The Court has found that the plaintiff is likely to prove that sale of the house to Anna was made without receiving an equivalent value. There is less evidence regarding Robert’s insolvency, but the Court does find that the plaintiff is likely to satisfy that element, because Robert had trouble meeting his obligations, he is incarcerated and therefore has (or had) limited employment prospects at the time, and no one has pointed to additional assets despite the plaintiffs assertion that the Property is his only known asset.
Anna herself is a creditor of Robert, with outstanding obligations senior to the claims in this case of $37,000. Not included in that amount is the child support, because the First Amendment discharged that obligation in return for transfer of the two motorcycles. Robert did receive value to the extent of $37,000. The Court will not stand in the way of the satisfaction of Robert’s debt to Anna arising out of the divorce agreement at this time.[2]
Given the plaintiffs strong likelihood of prevailing, the balance of harms weighs in her favor. It appears that Robert Grenier is unlikely to be able to satisfy a judgment in this case except to the extent of his interest in the Property. It also appears that both defendants are motivated to attempt to impair the plaintiffs right of recovery and have taken steps that likely are intended to accomplish that purpose. Though the harm could be remedied by money damages (if there were money left at the end of this case), the plaintiff here runs the serious risk of irreparable harm in that she may prevail, but have no prospect of recovery. That harm may constitute irreparable harm in the circumstances. Cf. Hull Municipal Lighting Plant v. Massachusetts Municipal Wholesale Electric Company, 399 Mass. 640, 643 (1987) (preliminary relief appropriate because a “recoverable monetary loss may constitute irreparable harm where the loss threatens the very existence of the movant’s business”).
The Court is also aware that the preliminary injunction framed by the Court is less likely to impair the sale of the Property and therefore inflict less injury upon Anna Grenier than an attachment. Should Ms. Grenier prefer an attachment, the parties may submit a joint motion for attachment or, in the absence of an agreement, she may submit a motion to substitute an attachment for the preliminary injunction.
ORDER
For the above reasons, the defendant, Anna Grenier, is hereby PRELIMINARILY ENJOINED from selling, assigning, transferring, alienating, conveying, encumbering, pledging, or hypothecating the property located at 14 Kirby Lane, North Smithfield, Rhode Island UNLESS she places in escrow with a person or institution designated by plaintiff the following sum forthwith upon receipt:
one-half the net proceeds of the sale (i.e. Robert’s half of the proceeds net of amounts paid to prior mortgagees or lien holders and one-half of her bonafide and documented expenses of such sale including broker’s commission)
—minus—
$37,000 (which she may keep as her own).
Given the financial circumstances described above, the Court does not require a bond, which would reduce the effectiveness of the security provided by the preliminary injunction.

 Because both parties appeared, had a full opportunity to argue, and presented evidence in written form as well as by live testimony, the Court treats the Motion as one for a preliminary injunction.

 There may be a question whether Anna — who ceased being Robert’s wife nearly a year before the accident — is an “insider.” The applicable statute defined “insider” as:
(i) if the debtor is an individual,
(A) a relative of the debtor or of a general partner of the debtor:
(B) a partnership in which the debtor is a general partner;
(C) a general partner in a partnership described in clause (B); or
(D) a corporation of which the debtor is a director, officer, or person in control.
For present purposes, the Court does not consider Anna an insider. Compare Hutchins v. Mead, 220 Mass. 348, 349 (1915) (“The relation between a husband and wife is such that transactions between them should be scrutinized with the greatest care to determine whether they are made in good faith, upon a sufficient consideration, and in satisfaction of a genuine trust”); Whitlock v. Hause, 692 F.2d 861 (1st Cir. 1982) (same).