**CASUAL MALE RETAIL GROUP, INC, and Casual Male RBC, LLP, Plaintiffs,**

v.

**Robert H. YARBROUGH, RKC Mail LLC d/b/a Mile Post Four, and Westport Big & Tall, Inc., Defendants.**

**Civil Action No. 05–12049–NMG.**

United States District Court, D. Massachusetts.

Oct. 17, 2007.

Jeffrey M. Burns, Roger A. Lane, Mark A. Berthiaume, Timothy E. Maguire, Zachary C. Kleinsasser, James M. Vant, Roger A. Lane, Greenberg Traurig LLP, Boston, MA, for Plaintiffs.

Amy Maher Rogers, Frank S. Puccio, Thomas B. Farrey, III, Brooke P. Seliger, Burns & Farrey, Worcester, MA, Hugh R. Curran, John A. Kiernan, Kenneth H. Naide, Bonner, Kiernan, Trebach & Crociata, LLP, Robert H. Gaynor, Bridget F. Schley, Robert H. Gaynor, Myles W. McDonough, Sloane & Walsh, LLP, Darlene Demelo Moreau, Duane Morris LLP, Frank S. Puccio, Burns & Farrey, Boston, MA, James L. Beausoleil, Jr., James H. Steigerwald, Matthew A. Taylor, Duane, Morris & Heckscher, Philadelphia, PA, for Defendants.

Courtney Worcester, Greenberg Traurig, LLP, Boston, MA.

## MEMORANDUM & ORDER

GORTON, District Judge.

A motion for sanctions, a renewed motion for oral argument, and seven post-

trial motions are pending following the conclusion of an eight-day trial in this case in June, 2007. The plaintiffs have filed motions: 1) for sanctions, 2) for an oral argument, 3) to reach and apply, 4) for a permanent injunction, 5) to amend the judgment to include an award of prejudgment interest, and 6) to alter and amend the judgment to hold the defendants jointly liable. The defendants have filed separately two renewed motions for judgment as a matter of law, and one defendant has filed a motion for a new trial.

## I. Background

### A. The Parties

Plaintiff Casual Male Retail Group, Inc. ("CMRG") is a retailer of big and tall men's apparel. Plaintiff Casual Male RBT, LLC ("RBT") is a wholly owned subsidiary of Casual Male that operates 22 Rochester Big & Tall stores as well as a catalog and internet business. (Collectively CMRG and RBT are hereinafter referred to as "the plaintiffs" or "Casual Male.")

The defendants are Robert H. Yarbrough ("Yarbrough") and his company, RKC Mail LLC, ("RKC") (collectively "Yarbrough/RKC"), and Westport Big & Tall, LLC ("Westport"). RKC, which also conducted an internet sales business under the name Mile Post Four, operates call centers and provides catalog and internet fulfillment services for retailers of men's apparel. Westport is a direct competitor of Casual Male in the men's big and tall retail apparel market and also recently launched a catalog and internet sales business.

### B. Factual Background

In February, 2002 Rochester Big & Tall ("Rochester") hired Yarbrough/RKC to maintain a call center, provide catalog and internet fulfillment services and create, develop and maintain Rochester's catalog and internet business. The contract imposed certain obligations on Yarbrough/RKC to maintain the confidentiality of Rochester's business information and contained a clause prohibiting Yarbrough/RKC from competing with Rochester during the term of the contract and for two years thereafter. When Rochester was acquired by Casual Male in October, 2004, Yarbrough/RKC entered into an Agreement for Independent Contractor Services with Casual Male ("the Independent Contractor Agreement") which assigned the Rochester contract to Casual Male.

In late 2004, a representative of Westport, a small retail company at the time, contacted Yarbrough to inquire whether Yarbrough/RKC could provide Westport with services similar to those it was already providing to Casual Male. The current litigation arose out of the ensuing relationship between Yarbrough/RKC and Westport. Casual Male alleged in its complaint that Yarbrough/RKC provided Westport with proprietary information related to Casual Male's business and violated the non-competition clauses of their contracts. Casual Male also alleged that Westport induced some of its employees to leave Casual Male to work for Westport and that those employees subsequently used certain of Casual Male's confidential information in order to compete with it.

### C. Outcome at Trial

On June 25, 2007, after an eight-day trial, the jury returned a verdict in favor of Casual Male. The jury found that defendants Yarbrough/RKC breached the restrictive covenants of the contract with Casual Male, intentionally interfered with advantageous business relations, and misappropriated the trade secrets or confidential business information of Casual Male.

The jury assessed Yarbrough/RKC with damages in the amount of $1,080,000 for breach of contract, $1 for tortious interference and $1 for misappropriation. The jury also found Westport liable for intentional interference with contractual relations in the amount of $400,000. On July 6, 2007, the Court entered judgment in favor of Casual Male against the defendants in the amounts awarded by the jury.

## II. *Legal Analysis*

### A. Plaintiffs' Motion for Sanctions against Defendants

On June 17, 2007, during trial, Casual Male moved for sanctions against defendants Yarbrough/RKC and Westport for the defendants' alleged "outrageous and misleading scheme to distract Casual Male" during trial. This Court deferred resolution of the motion until after trial was concluded. On July 18, 2007, the defendants filed a joint motion for leave to file opposition to plaintiffs' motion for sanctions and simultaneously filed their opposition.

■ The motion for sanctions arises out of events and a subsequent order that occurred during the course of trial. On June 12, 2007, the second day of trial, Westport announced to this Court that the defendants had recently learned that Casual Male's Rochester catalogue had experienced internal problems with its mail plan in the Fall of 2006. Arguing that Casual Male should have produced that information during discovery because of its bearing upon potential damages, Westport sought immediate discovery pursuant to a trial subpoena. This Court sanctioned the subpoena and, when Casual Male produced numerous documents the defendants claimed never to have seen before, allowed the defendants to take limited depositions in preparation for the examination and re-examination of witnesses.

Casual Male moves for sanctions claiming that the defendants knew of the catalogue mailing issue and the documents pertaining to it well before trial. In support of its motion, it points to certain documentation, deposition testimony and reports which the defendants had well before trial. Casual Male also contends that the defendants knew of the mailing problem as early as November, 2006, but failed to make a timely request for relevant documents during discovery and, instead, did nothing until trial. Casual Male further argues that the defendants strategically made their announcement to this Court at trial in order to disrupt Casual Male's presentation of its case. It seeks the imposition of sanctions in the amount of costs and attorney's fees associated with the production of the documents and the taking of the depositions.

Casual Male makes its motion from a precarious position. There may be some question about when the defendants first learned of the documents relating to the internal mailing issue but not even Casual Male argues that it produced the documents in question. By Casual Male's own admission, at some point during discovery, Westport requested:

> "[a]ll documents reflecting, relating to, or concerning the lost profits that Rochester allegedly incurred, including, but not limited to, financial statements ... internal communications ... and e-mail messages."

An independent problem with respect to the mailing of the catalogue would certainly be relevant to a damages claim for lost profits but Casual Male did not produce such documents. Had it done so, the short-notice discovery issue would have been alleviated. Because Casual Male did not produce the documents prior to trial, its request for sanctions will be denied.

### B. Plaintiffs' Renewed Motion for Oral Argument

This Court allowed the motion for oral argument, which occurred on October 1, 2007. The parties argued the seven post-trial motions addressed below.

### C. Post-trial Motions of Casual Male

#### 1. Plaintiffs' Motion to Reach and Apply Monies Due Under Fulfillment Services Agreement Between Westport and Yarbrough/RKC (Docket No. 282)

■ In a pre-emptive effort to enforce its judgment against Yarbrough/RKC, Casual Male moves to apply its judgment, pursuant to Mass. Gen. Laws Ch. 214 § 3(6), to payments owed by Westport to Yarbrough/RKC under their new contract. Although the oppositions and the reply focus primarily on whether the motion was filed prematurely and on the differences between the reach-and-apply remedy and trustee process, neither of those issues is essential to the disposition of this motion.

The reach and apply statute applies to "property, right, title, or interest, legal or equitable ... which cannot be [acquired in trustee process] or taken on execution." As a general rule, most interests that are assignable are subject to reach and apply. *Bethlehem Fabricators v. H.D. Watts Co.*, 286 Mass. 556, 190 N.E. 828 (1934). Interests in future payments arising out of executory contracts are, however, an exception. See *Pettibone v. Toledo, C. & St. L.R. Co.*, 148 Mass. 411, 19 N.E. 337 (1889).

Casual Male was given additional time (after oral argument) to provide this Court with a case in which the statutory reach-and-apply remedy has been extended to an executory contract but was unable to do so. Nonetheless, Casual Male unpersuasively argues that it is entitled to such an order as a matter of equity, citing the Massachusetts Superior Court case of *Rotondi v. Data Care Corporation*, No. 019348J, 2001 WL 1809815 (Mass.Super.Nov.21, 2001).

The cited case is neither binding on this Court nor persuasive primarily because here Casual Male has failed to prove any irreparable harm. Economic harm is traditionally not considered irreparable and the few exceptions found involve cases in which the plaintiff was in danger of going out of business due to the economic damage. *E.g., Hull Municipal Lighting Plant v. Mass. Municipal Wholesale Elec. Co.*, 399 Mass. 640, 644, 506 N.E.2d 140 (1987). Furthermore, those exceptions involved injunctions against the transfer of funds already in the defendants' possession, a much less intrusive remedy than an order to perform an executory contract. Casual Male's motion to reach and apply monies due under the Fulfillment Services Agreement between Westport and Yarbrough/RKC will be denied.

#### 2. Plaintiffs' Application for Permanent Injunctive Relief (Docket No. 290)

Casual Male seeks an order, under Mass Gen. Laws Ch. 93 ("the Massachusetts Antitrust Act" or "the Act"), § 42A and in equity enjoining:

(1) Yarbrough/RKC and Westport from soliciting any of the 12,164 individuals who appear on both customer lists ("the matching customers") unless they have been obtained by legitimate means,

(2) all defendants from using or disclosing any information related to the matching customers,

(3) all defendants from continuing to possess any information related to the matching customers, and

(4) all defendants from using or disclosing any of Casual Male's trade secrets or confidential information generally.

Casual Male also seeks the appointment of a Monitor to supervise and assure compliance with the proposed order.

■ Casual Male seeks this injunction under either of two sources of law. First, the Act provides, in relevant part, that "in an action by an employer against a former employee" the prevailing party in a trade-secret case "shall, upon petition, be granted a preliminary injunction if it is shown that said employee" is competing with the employer by means of using the misappropriated trade secrets. Mass Gen. Laws Ch. 93, § 42A. Second, a court may order an injunction in equity. The First Circuit Court of Appeals follows a four-part test for the entry of a permanent injunction. The plaintiff must show that: 1) it has prevailed on the merits, 2) it would suffer irreparable injury without a permanent injunction, 3) the balance of the harms is in its favor, and 4) there would be no adverse effect on the public interest. *A.W. Chesterton Co., Inc. v. Chesterton*, 128 F.3d 1, 5 (1st Cir.1997).

### a. Injunction against Westport

■ Section 42A of the Massachusetts Antitrust Act does not apply on its face to the motion for an injunction against Westport. The jury did not find that Westport misappropriated Casual Male's confidential information. The verdict in Casual Male's favor for such misappropriation was limited to Yarbrough/RKC. When asked whether Westport "intentionally interfered with advantageous business relations of Casual Male" the jury answered "No." Thus, with respect to Westport, there has been no showing of competition by means of improperly-acquired trade secrets.

■ The traditional four-part test for injunctive relief also fails to favor Casual Male's application as to Westport because Casual Male did not prevail on the merits. It requests an injunction restricting the use of the matching customers and other trade secrets but, as noted above, the jury verdict did not find any misappropriation by Westport. It found Westport liable only for interference with contractual relations, in other words, for inducing Yarbrough/RKC to violate its contracts with Casual Male and to assist Westport in competing with Casual Male. Nothing in the proposed injunction relates to interference with contractual relations, the only tort claim on which Casual Male has prevailed on the merits. The Court will, therefore, deny Casual Male's application for a permanent injunction against Westport.

### b. Injunction against Yarbrough/RKC

■ Casual Male cannot rely on the Massachusetts Antitrust Act to justify an injunction against Yarbrough/RKC. Section 42A of the Act requires that the employer demonstrate that the employee has used the trade secret in direct competition against the employer. Such a conclusion cannot be drawn from the jury verdict. Although the jury did find that Yarbrough/RKC has misappropriated trade secrets, it is not at all clear that the trade secret misappropriated was the customer list (the subject matter of the proposed injunction). The jury heard a great deal about confidential information during the trial but it is impossible to determine what information they found to have been misappropriated.

Furthermore, there was no finding that Yarbrough/RKC used the customer list to compete with Casual Male. In fact, given that the jury found that Westport had not interfered with business relations with respect to the customer list, the most logical

conclusion to be drawn from the verdict is that the jury found that Yarbrough/RKC did not use the customer list in direct competition with Casual Male. As a result, the Act does not apply.

■ Whether Casual Male satisfies the First Circuit's four-part test for a permanent injunction with respect to its claim against Yarbrough/RKC is even less clear. Because the jury found Yarbrough/RKC liable for misappropriation of trade secrets, Casual Male has satisfied the first prong of the test: success on the merits. There was some debate at trial, however, over whether the customer list constituted a trade secret and, because the jury verdict is unclear in that regard, the Court will decline to enjoin permanently the use of that list.

■ Even if the customer list were deemed to be a trade secret, Casual Male presents an unpersuasive argument with respect to the third prong of the test for injunctive relief, balancing the harms. The jury awarded only one dollar to Casual Male on its misappropriation claim, suggesting that the harm to Casual Male was *de minimis*. Yarbrough/RKC, on the other hand, will likely be unable to continue doing business if the Court imposes Casual Male's proposed injunction. Given that the jury verdict did not categorize the trade secret violation and the potential harm to Yarbrough/RKC if an injunction is imposed greatly outweighs the potential harm to Casual Male if it is not, plaintiffs' application for a permanent injunction will be denied.

### c. Rule 7.1 Sanctions

■ In its opposition to Casual Male's application, counsel for Yarbrough/RKC requests that Casual Male be sanctioned for failing to consult with opposing counsel before filing the present motion, as required by Local Rule 7.1(A)(2). The one case it cites in support of this request involved a much more egregious situation, in which a party waited until the Friday before a holiday weekend to "blind side" its opposition with an emergency motion. *Converse Inc. v. Reebok Intern. Ltd.*, 328 F.Supp.2d 166, 170 (D.Mass.2004). The failure to consult with opposing counsel in this case, although a violation of the local rule for which defendant's counsel deserves censure, does not warrant sanctions.

### 3. Plaintiffs' Motion to Amend the Judgment to Include an Award of Prejudgment Interest (Docket No. 307)

Casual Male contends that it is entitled to $85,876.45 in prejudgment interest on its tort claims against Yarbrough/RKC and Westport. It also argues that if Massachusetts law applies to the breach of contract claim, it is entitled to $231,860.71 in prejudgment interest against Yarbrough/RKC on that claim. Yarbrough/RKC and Westport respond that prejudgment interest is inappropriate in this case because it is unclear whether the jury meant to compensate Casual Male for past or future losses. Yarbrough/RKC also argues that Georgia law applies to the contract claim and both parties agree that, under Georgia law, Casual Male is not entitled to prejudgment interest on the contract claim.

### a. Prejudgment Interest on the Tort Claims

■ In the First Circuit, state law governs whether to award prejudgment interest on state law claims. *Crowe v. Bolduc*, 365 F.3d 86, 90 (1st Cir.2004). The parties appear to agree that Casual Male's claims against the Defendants for tortious interference and against Yarbrough/RKC for misappropriation are

state tort claims governed by Massachusetts law and this Court ruled accordingly at trial. In Massachusetts, prejudgment interest on tort claims is governed by a statute which states:

> In any action in which a verdict is rendered ... for pecuniary damages for personal injuries to the plaintiff or for consequential damages, or for damages to property, there shall be added by the clerk of the court to the amount of damages interest thereon at the rate of twelve per cent per annum from the date of commencement of the action ...

Mass. Gen. Laws c. 231 § 6B. Prejudgment interest on damages is inappropriate, however, when damages are awarded to compensate for future losses. *Conway v. Electro Switch Corp.*, 402 Mass. 385, 523 N.E.2d 255 (1988). In other words, the statute was not intended to award interest on damages accruing after the filing of the action. *Jet Spray Cooler, Inc. v. Crampton*, 377 Mass. 159, 182 n. 21, 385 N.E.2d 1349 (1979).

 At trial in this case, Casual Male's expert, Maureen Chakroborty, calculated damages by estimating Casual Male's lost profits from September 2005, when Westport launched its catalogue business, through March 2008. Casual Male filed the lawsuit on September 22, 2005. As a result, according to Casual Male's own expert, damages would have accrued for only 21 days before the filing of the suit whereas the great majority of damages accrued after the filing of the suit.

Casual Male argues that there was additional testimony about damages that accrued in the Spring and Summer of 2005. Because the jury did not indicate for what time period it was awarding damages, however, it is impossible for this Court to know whether the jury was compensating Casual Male for damages incurred before or after the filing date in September, 2005.

In *Cahill v. TIG Premier Ins. Co.*, 47 F.Supp.2d 87 (1999), this Court denied prejudgment interest to a plaintiff in a contract case in which his expert calculated damages from 1994 until 1999 when the lawsuit had been filed in July 1996. The Court found that because the Plaintiff's expert had calculated damages from 1994 to 1999 "the jury's award was intended to compensate [the plaintiff] for damages incurred both before and after July, 1996." Ultimately the Court decided that the ambiguity of the jury's verdict led it to err on the side of caution and to conclude that prejudgment interest was inappropriate in that case. *Id.* at 91.

Given the timing of the accrual of damages and the filing of the lawsuit in this case, it is likely that the jury meant to compensate Casual Male primarily for losses incurred after the filing of the lawsuit. In any event, this Court will again err on the side of caution and deny the Plaintiffs' motion to amend the judgment to include an award of prejudgment interest as to their tort claim.

### b. Prejudgment Interest on the Contract Claim

Casual Male and Yarbrough/RKC agree that, under Georgia law, Casual Male is not entitled to prejudgment interest on its breach of contract claim. Moreover, there is no reason why Massachusetts law should apply. In fact, Casual Male concedes in a footnote in its memorandum that Georgia law governs Casual Male's breach of contract claim against Yarbrough/RKC. No doubt that is because the Facilities Agreement has a choice of law clause which declares Georgia law as the applicable law. Therefore, it applies to the contract claim and prejudgment interest as to that claim will not be awarded.

### 4. Plaintiffs' Motion to Alter Judgment and Amend Judgment to Hold Westport Liable for Damages Assessed Against Yarbrough (Docket No. 310)

In its fourth and final motion, Casual Male seeks to amend the judgment pursuant to Fed.R.Civ.P. 59(e) to hold Westport jointly liable for the damages assessed against Yarbrough/RKC on the breach of contract claim. Under Rule 59(e), a party may "direct the district court's attention to newly discovered material evidence or a manifest error of law or fact ... enabl[ing] the court to correct its own errors." *Aybar v. Crispin–Reyes*, 118 F.3d 10, 15 (1st Cir.1997). Casual Male argues that this Court committed an error of law when it refused to instruct the jury on Westport's possible joint liability based on a Georgia statute, O.C.G.A. § 51–12–30 ("the Statute"). According to Casual Male, under the Statute, Westport maliciously procured an injury to be done to another, making it jointly liable for Yarbrough/RKC's breach of contract as a matter of law.

Casual Male characterizes the Statute as relating solely to the allocation of damages but, in fact, the Statute creates a cause of action in tort, essentially equivalent to tortious interference with contractual relations. *Atlanta Market Center Management Co. v. McLane*, 269 Ga. 604, 607, 503 S.E.2d 278 (1998). The tort claims in this case are governed by Massachusetts, not Georgia, law so the Statute is not applicable. Moreover, at trial this Court allowed a motion for directed verdict on the civil conspiracy claim against Westport primarily because of its overlap with the claim for tortious interference with contractual relations. To hold Westport jointly liable for damages assessed against Yarbrough on the breach of contract claim would be similarly duplicative. *See Insight Technology, Inc. v. FreightCheck, LLC*, 280 Ga.App. 19, 23, 633 S.E.2d 373 (2001). Finding no manifest error of law in its refusal to give the instruction on joint liability under the Georgia statute, this Court will deny Casual Male's motion to hold Westport jointly liable for the damages assessed against Yarbrough on the breach of contract claim.

### D. Motions brought by Westport

### 1. Renewed Motion for Judgment as a Matter of Law (intentional interference with business relations) (Docket No. 305)

Westport renews its motion for judgment as a matter of law with respect to Casual Male's claim for intentional interference with business relations on two theories: 1) lack of sufficient evidence that Yarbrough/RKC gave Westport any confidential information and 2) lack of evidence of improper motive or means.

Fed.R.Civ.P. 50(b) allows a party to renew its request for judgment as a matter of law after the entry of judgment. The Court may grant a motion for judgment as a matter of law if the court finds that "a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue." Fed.R.Civ.P. 50(a).

As to the first of Westport's theories, the confidentiality of what Yarbrough told Westport is irrelevant to the subject claim. As to the second, no extra malicious motive is required to support the verdict beyond the knowing inducement to breach of contract. *Addamax v. Open Software Found., Inc.*, 888 F.Supp. 274, 286 n. 23 (D.Mass.1995). There was ample evidence of that knowledge at trial to support the jury's verdict. This Court will, therefore, deny Westport's renewed motion for judgment as a matter of law on Count VII, intentional interference with business relations.

### 2. Motion for New Trial on Liability (challenging jury charge) (Docket No. 306)

Westport moves, pursuant to Fed. R.Civ.P. 59(a), for a new trial on the basis of the Court's refusal to instruct the jury that

"in the absence of specific language in the non-compete provision that prohibits the employee from preparing to compete ... [an] employee is not barred from taking steps to prepare to compete with the former employer."

After a jury trial, a new trial may be granted under Fed.R.Civ.P. 59(a) "for any of the reasons for which new trials have heretofore been granted in actions at law in the courts of the United States."

■■■■ An instruction on preparation to compete may have been appropriate had either defendant argued that any of the conduct at issue was properly characterized as preparation rather than actual competition. Neither party so argued, and thus such an instruction would not have served to "illuminate the law applicable to the controlling issues," *Zimmerman v. Direct Federal Credit Union*, 262 F.3d 70, 80 (1st Cir.1998).

Westport cites *Brooks Automation, Inc. v. Blueshift Technologies, Inc.*, 2006 WL 307948 for the propriety of its requested instruction, pointing out that the *Brooks* court distinguished *DeLong Corp. v. Lucas*, 278 F.2d 804 (2d Cir.1960), in which such an instruction was denied. The facts here are clearly more analogous to *De-Long* than to *Brooks:* Yarbrough/RKC joined plaintiff's competitor (Westport) in developing a service for market in direct competition with Casual Male; Yarbrough/RKC did not commence its own enterprise, preparing to compete after the term of the noncompete clause elapsed. Because the Court did not err in refusing to give the jury instruction on preparation,

it will deny Westport's motion for a new trial on liability.

### E. Motions brought by Yarbrough/RKC

### 1. Renewed Motion for Judgment as a Matter of Law (breach of contract) (Docket No. 301)

Yarbrough/RKC renews its motion for judgment as a matter of law as to Count VII, breach of contract. It argues that the contractual provisions that it is alleged to have breached, the noncompete clauses in the agreements with Casual Male, were invalid as a matter of law and thus the breach of contract claim should never have been put to the jury. Yarbrough/RKC contends that under Georgia law, because the Facilities Agreement is styled as an independent contractor agreement, it should be treated as an employment contract and viewed with strict scrutiny.

■■■■ As concluded above, Georgia law governs the contract claims in this case and that body of law disfavors restrictive covenants (such as noncompete clauses) as a matter of public policy. The issue of whether or not such covenants are valid and enforceable depends upon how the court characterizes the underlying contract. If the covenant is ancillary to an employment contract, it receives "strict scrutiny"; if it is part of the sale of a business, the scrutiny is much lower. A middle ground exists for partnership agreements. *Northside Hospital, Inc. v. McCord*, 245 Ga.App. 245, 247, 537 S.E.2d 697 (Ga.App.2000). As a general rule, the enforceability of such covenants turns on their reasonableness, the relative bargaining power of the parties and the presence of independent consideration for the covenant. *Swartz Investments, LLC v. Vion Pharmaceuticals, Inc.*, 252 Ga.App. 365, 556 S.E.2d 460, 463 (2001).

■ Although some "independent contractor" agreements have been found to be employment contracts under a different name and have had their restrictive covenants invalidated accordingly, *e.g. Jenkins v. Jenkins Irrigation, Inc.,* 244 Ga. 95, 259 S.E.2d 47 (1979), there remains a distinction between a true independent contractor and an employee. Because Yarbrough/RKC was an independent contractor and not a de facto employee of Casual Male, the restrictive covenants will be evaluated by the mid-level reasonableness standard rather than by strict scrutiny.

In this case, the non-compete clause was reasonable. The parties enjoyed equal bargaining power and reached an agreement that was in no sense a contract of adhesion. Each term was bargained for and independent consideration supported the agreement not to compete. The two-year time period imposed is not unreasonable, nor is the limitation to competing in the internet or catalogue big-and-tall clothing business, the specific service that Yarbrough/RKC formerly provided for Casual Male. Thus the noncompete clause was reasonable and the Court will deny Yarbrough/RKC's motion for judgment as a matter of law on Counts I and II, breach of contract.

### ORDER

In accordance with the foregoing memorandum:

1) Plaintiffs' motion for sanctions against defendants (Docket No. 270) is **DENIED**;

2) Plaintiffs' renewed motion for oral argument (Docket No. 318) is **ALLOWED,** *nunc pro tunc;*

3) Plaintiffs' motion to reach and apply monies due under fulfillment services agreement between Westport and Yarbrough/RKC (Docket No. 282) is **DENIED**;

4) Plaintiffs' application for permanent injunctive relief (Docket No. 290) and defendant Yarbrough/RKC's request for Rule 7.1 sanctions are **DENIED**;

5) Plaintiffs' motion to amend judgment to include an award of prejudgment interest (Docket No. 307) is **DENIED**;

6) Plaintiffs' motion to alter and amend judgment to hold Westport liable for damages assessed against Yarbrough (Docket No. 310) is **DENIED**;

7) Defendant Westport's renewed motion for judgment as a matter of law (Docket No. 305) is **DENIED**;

8) Defendant Wesport's motion for a new trial pursuant to Fed.R.Civ.P. 59(a) (Docket No. 306) is **DENIED**;

9) Defendant Yarbrough/RKC's renewed motion for judgment as a matter of law (Docket No. 301) is **DENIED**;

**So ordered.**